510 F.Supp. 726 (1981)
CHARLES SCHMITT & COMPANY, Plaintiff,
v.
Thomas W. BARRETT, III, Defendant.
No. 79-456C(5).
United States District Court, E. D. Missouri, E. D.
March 17, 1981.
*727 Richard D. Watters, St. Louis, Mo., for plaintiff.
Theodore F. Schwartz, Clayton, Mo., for defendant.

MEMORANDUM OPINION
CAHILL, District Judge.
This matter came before the Court for a decision on the merits after trial to the Court sitting without a jury. The plaintiff, in his petition, alleges breach of contract for the failure and refusal of the defendant to divide equally with the plaintiff the proceeds from the sale of a group of vintage automobiles. This Court, having considered the pleadings, and having heard the testimony of all of the witnesses, having inspected the exhibits, and having knowledge of the stipulations of the parties, now makes the following findings of fact and conclusions of law as required by Fed.R. Civ.P. 52.

Findings of Fact
1. Plaintiff corporation is a Missouri corporation owned by Charles Schmitt who is a resident of the City of St. Louis, Missouri, and has long been engaged in the business of buying and selling expensive, luxury automobiles, and in fact is a registered dealer with business quarters in the City of St. Louis, Missouri. The defendant is an individual, a resident of Scottsdale, Arizona, where he also is an established dealer in antique and classic automobiles.
2. Both plaintiff and defendant have been buying and selling expensive automobiles throughout the country, and both are considered successful and experienced car dealers in their special areas of concentration.
3. Both gentlemen had been friends for many years and, in addition, had participated in numerous business transactions with one another; each of them had bought and sold cars from the other, and both had relied in the past upon informal agreements ("handshake" contracts) with one another. This particular transaction apparently ended that harmonious relationship, and like the woman scorned, both parties have vented their fury in this trial. Indeed, because of the great emotional overlays exhibited by the litigants, demonstrated by diametrically opposite factual assertions on even the most trivial circumstances, many important details are clouded and unanswered which could well have been determinative of the ultimate findings of fact had they been more fully revealed.
4. Both plaintiff and defendant were obviously emotionally distraught by their disagreements, and neither could give a dispassionate recollection of the relevant events without resort to anger and strong feeling. The testimony of both litigants is rife with outbursts, emotional gestures, and *728 ambiguities. There are only a few facts upon which the litigants really agree. In addition to the sharply contradictory recollection of the incidents, there remain repeated discrepancies in the documentary evidence offered as exhibits, including the pleadings and other records of which the Court took judicial notice. There is, also, an almost unbelievable lack of financial documentation concerning the pertinent transactions, which did involve substantial financial investments. Plaintiff failed to produce rudimentary evidence of the contract, while defendant relied upon handwritten notes kept by his secretary in a memo book for transactions totaling thousands of dollars.
5. In spite of this lack of clarity and completeness, the Court is called upon to exercise its judgment nonetheless, weighing the available credible evidence and attempting to determine what, in logic and reasoning, may be inferred to have occurred, ever bearing in mind that the initial burden of proof rests with the plaintiff. Therefore, this Court makes the following findings of fact based upon a careful consideration of the evidence adduced, and arrives at the following conclusions of law.

Specific Findings of Fact
1. In early May, 1976, the plaintiff's office manager, Ray Hummel, located a fleet of about 16 unregistered, low mileage Dodge and Plymouth cars manufactured between 1953-57. They were warehoused in Texas. Hummel arranged for the tentative purchase of this group of cars from one Larson, subject to inspection and approval by plaintiff Schmitt, the company president, who was then on a business journey in Arizona. Hummel called plaintiff and recommended that plaintiff purchase the fleet. Plaintiff was near defendant's home and invited him to go with plaintiff to inspect the cars. On May 5, 1976, plaintiff, defendant, and others flew to Lubbock, Texas, inspected the cars, and agreed orally to buy them and then to divide the profits after their resale. Defendant gave Larson a cashier's check for $22,000 as down payment. This check had been given to defendant by another customer named Gruber. (It should be noted that neither party introduced the check itself as evidence, or adequately explained its absence.) It should also be noted that plaintiff's claim that $22,000 was loaned to him by defendant, and that he then gave the $22,000 to Larson, was not supported by documentary evidence nor was there written proof of plaintiff's claim that he repaid the $22,000.
2. On May 7, 1976, all of the principals, including Larson, met in St. Louis where plaintiff paid Larson $45,000 by check, $35,000 made payable to Larson for the fleet and $10,000 to a car dealer to purchase a Lincoln for Larson's wife. The Court finds that the $10,000 car purchase was done at the direction of Larson, thus making a payment of $67,000 in total payment for the fleet. Title to all of the cars was then transferred to plaintiff from Larson. Again, it should be noted that Larson did not testify nor was his deposition offered by either party.
3. Defendant then ordered and paid for the transportation of the fleet from Lubbock, Texas, to the defendant's facility in Arizona May 12, 1976.
4. On May 13, 1976, the defendant returned to St. Louis, for reasons which the Court does not determine, and gave plaintiff a check for $33,500, one-half of the purchase price of $67,000. The invoice marked Defendant's Exhibit E shows the listing of the serial numbers of each of the cars in the fleet and is considered by the Court as a bill of sale to defendant for plaintiff's one-half interest in the cars. The Court is aware of the allegations by plaintiff that the defendant returned the deposit of $33,500 to plaintiff as "conscience money" because defendant had defrauded plaintiff on another car deal involving a 1925 Isotta-Fraschini purchased from defendant by plaintiff for $175,000. This car was purportedly built for Rudolph Valentino, and plaintiff claims that defendant entered into subsequent transactions with him involving the repurchase of this car and the trade of two others in order to buy peace from a *729 lawsuit involving a charge that defendant had made fraudulent claims concerning the Isotta-Fraschini. Plaintiff alleges that defendant agreed to still pay plaintiff one-half of the profits from the sale of the Dodge-Plymouth fleet as part of an agreement by plaintiff not to sue defendant regarding the Valentino car.
5. Defendant, on the other hand, claims that he returned to St. Louis to refund one-half of plaintiff's investment on the Dodge-Plymouth fleet because plaintiff was in financial difficulties with his bank and needed "all the cash he could get." Once again, only paltry evidence regarding plaintiff's financial status in 1976 was offered, and only the barest information concerning plaintiff's floor plan of financing was proffered by either party.
6. Many, many questions are unanswered. For example, the documented evidence shows that if plaintiff paid $45,000 as investment, why then did defendant only repay $33,500. The defendant counters that he must have given plaintiff cash of $11,500 but there is absolutely no documentary proof of such a substantial payment to plaintiff.
7. Therefore, the Court must make its findings of fact and conclusions of law based on the testimony and the local inferences to be drawn therefrom, as follows:

Conclusions of Law
1. The Court has diversity jurisdiction in this action under 28 U.S.C. § 1332(a). That section provides:
(a) The district courts shall have ... jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between 
(1) citizens of different States;
The requisites of this statute have been met in that this is a civil breach of contract action, and the matter in controversy exceeds the sum of $10,000 since plaintiff prayed for $153,500. Plaintiff is a Missouri corporation with its principal place of business in Missouri, and defendant is domiciled in Arizona.
2. Plaintiff and defendant entered into an enforceable oral agreement on May 5, 1976, to purchase a fleet of unregistered, low mileage Dodge and Plymouth automobiles and to divide the profits from their resale. Although the agreement was oral the statute of frauds is not a valid defense. Since jurisdiction is based on diversity of citizenship, the substantive law of the state must be applied. Erie R. Co. v. Tompkins, 304 U.S. 64, 73, 58 S.Ct. 817, 819, 82 L.Ed. 1188 (1937). Mo.Ann.Stat. § 432.010 sets out the types of contracts that are subject to the statute of frauds, which must be in writing and signed by the party to be charged. That section states:
432.010. Statute of frauds  contracts to be in writing.  No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.
The oral agreement entered into between plaintiff and defendant does not fall within any of the categories of Mo.Ann.Stat. § 432.010. Assuming arguendo, that the Court construed the agreement to be a contract for the sale of goods for the price of $500 or more (which it does not), the oral agreement would still be enforceable under *730 Mo.Ann.Stat. § 400.2-201(3)(b), because the parties admitted via affidavit and testimony in court that the agreement was made. See, Oskey Gasoline and Oil Co. v. Continental Oil Co., 534 F.2d 1281, 1283 n.4 (8th Cir. 1976); J. White & R. Summers, Uniform Commercial Code 65 (2d ed. 1980); U.C.C. § 2-201(3)(b).
3. The contract was rescinded on May 13, 1976, in Missouri when defendant repaid plaintiff $33,500 which constituted one-half of the purchase price. Rescission calls for cancellation of the bargain and the return of the parties to the status quo ante. Myzel v. Fields, 386 F.2d 718, 742 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). It has been established that a contract may be rescinded by actions or conduct. S. S. Silberblatt, Inc. v. Seaboard Surety Company, 417 F.2d 1043, 1054 (8th Cir. 1969); Allied Mutual Insurance Company v. Hingst, 360 F.Supp. 1204, 1207 (D.N.D.1973). Here a rescission was effectuated when defendant repaid plaintiff one-half of the purchase price. At that point the parties were returned to their former positions.
4. Plaintiff claims that the division of the profits was still to be made after rescission and repayment of the plaintiff's investment, because defendant had defrauded plaintiff on the Valentino car deal and wished to make amends to plaintiff as well as avoid embarrassing litigation in that case. But the defendant denied that this was so, and the plaintiff's testimony, devoid of corroborative documentation, is insufficient to support plaintiff's allegations. The Eighth Circuit holds that one of the essential elements of a contract "is mutuality of agreement" or "mutual assent" which is frequently referred to as a "meeting of the minds" of the parties. Fairway Center Corporation v. U. I. P. Corporation, 502 F.2d 1135, 1140 (8th Cir. 1974); Sweetarts v. Sunline, Inc., 423 F.2d 260, 261 n.2 (8th Cir. 1970); Neff v. World Publishing Company, 349 F.2d 235, 248 (8th Cir. 1965); Local U. No. 529, U. Bro. of Carpenters, Etc. v. Bracy Dev. Co., 321 F.Supp. 869, 875 (W.D.Ark. 1971).
5. Since defendant has failed to show that he returned all of the plaintiff's investment (only $33,500 instead of $45,000), defendant is ordered to repay $11,500 to plaintiff. The two checks marked defendant's Exhibits A and B for $35,000 and $10,000 are the clearest and most persuasive documentary evidence in this case. They strongly support plaintiff's version of the disputed facts to the extent that he had contributed the $45,000 as investment capital in the venture.
6. The Court finds that the parties failed to maintain a modicum of records concerning substantial financial transactions. When such failures lead to extensive litigation, both parties must be held accountable. If pertinent records had been kept, this case probably could have been settled very promptly. Therefore, costs will be divided equally between plaintiff and defendant.
7. Accordingly, judgment is entered in favor of plaintiff in the amount of $11,500.00.