**CHARLES SCHMITT & CO.**, Appellee,

v.

**Thomas E. BARRETT, III**, Appellant.

No. 81–1385.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1981.

Decided Feb. 22, 1982.

Lashly, Caruthers, Thies, Rava & Hamel, P. C., Richard D. Watters, argued, St. Louis, Mo., for appellant.

Law offices of Theodore F. Schwartz, Theodore F. Schwartz, argued, Barry S. Ginsburg, Clayton, Mo., for appellee.

Before HENLEY and ARNOLD, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

Plaintiff Charles Schmitt & Co. (Schmitt) brought this action against defendant Thomas E. Barrett, III, (Barrett) alleging breach of contract for the failure and refusal of Barrett to divide equally with Schmitt the proceeds from the sale of a group of special interest automobiles. The cause was tried before the court sitting without a jury, the Honorable Clyde S. Cahill, district judge, presiding. Barrett appeals from the district court judgment that rescinded the contract and awarded Schmitt $11,500. The district court decision is reported at 510 F.Supp. 726 (E.D.Mo.1981). For reasons set out more fully herein, we affirm the district court decision.

Schmitt is a Missouri corporation and has long been engaged in the business of buying and selling expensive, luxury automobiles. Charles Schmitt is the president of that corporation. Barrett is a nationally known dealer in antique and classic automobiles. He resides in Scottsdale, Arizona. Both parties are considered successful and experienced car dealers in their special areas of concentration. In fact, prior to this action, the parties had often done business with each other based upon informal handshake agreements and the parties considered each other as friends.

In early May, 1976, Ray Hummel, Schmitt's office manager, located a fleet of about 16 unregistered, low mileage Dodge and Plymouth cars manufactured between 1935 and 1957. Hummel arranged for the tentative purchase of this group of cars from one Larson, subject to inspection and approval by the company president. Hummel then called the company president and recommended purchase of the fleet. At that time, Schmitt was near Barrett's home in Arizona. Schmitt invited Barrett to inspect the cars with him. On May 5, 1976, a group, including Schmitt and Barrett, flew to Texas, inspected the automobiles and agreed orally to buy them and divide the profits after resale of the cars. Barrett gave Larson a cashier's check for $22,000 as a down payment. Schmitt claimed that Barrett loaned him the $22,000 and that he, Schmitt, made the down payment on the automobiles.

On May 7, 1976, all of the principals, including Barrett, met in St. Louis, Missouri, where Schmitt paid Larson $45,000. This payment was made by giving Larson two checks, one payable to Larson in the amount of $35,000, and the other payable to a Lincoln-Mercury automobile dealer in the amount of $10,000. The trial court found that the check made payable to the Lincoln-

* Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

Mercury dealer was done so at the direction of Larson and that the total amount paid for the fleet of cars was $67,000. After Schmitt made payment, Larson transferred title to the automobiles to Schmitt.

On May 13, 1976, Barrett returned to St. Louis and gave Schmitt a check for $33,500, one-half of the purchase price of the fleet of automobiles. The trial court considered an invoice listing the serial numbers of the cars to be a bill of sale transferring to Barrett the one-half interest in the fleet of cars held by Schmitt. Schmitt alleged that Barrett returned the money to buy peace and prevent Schmitt from bringing a lawsuit based upon an entirely separate transaction. Schmitt alleged that Barrett agreed to still pay him one-half of the profits from the resale of the fleet of cars as part of the deal to buy peace. Barrett, on the other hand, claimed that he returned to St. Louis to refund Schmitt's investment in the Dodge-Plymouth fleet upon Schmitt's urging. Barrett claimed that Schmitt was into financial difficulty with his bank and needed all the cash Schmitt could get.

Throughout its memorandum decision, the trial court noted that only paltry evidence was introduced on many important issues and that several important questions were not answered to the court's satisfaction. We agree that the parties failed to answer some questions that are important to the resolution of this case. Nonetheless, we commend the trial court for the excellent job it did in making some semblance of sense out of the jumbled facts that were presented to it.

■ Barrett has raised three issues on appeal that are worthy of discussion. The first is whether the trial court erred when it found that it had in personam jurisdiction over Barrett after it found as fact that the agreement under which Schmitt sought relief was entered into in Texas and Barrett was a resident of Arizona. It is well settled that a plaintiff in a federal district court may use the "long arm" statutes of the state in which the federal court sits to obtain personal jurisdiction over a non-resident defendant. *See* Fed.R.Civ.P. 4(d)(7)

and (e); *United States v. First National City Bank*, 379 U.S. 378, 391, 85 S.Ct. 528, 535, 13 L.Ed.2d 365 (1965). The Missouri Long Arm Statute provides, in pertinent part, that:

1. Any person ... whether or not a citizen or resident of this state ... who in person, or through an agent, does any of the acts enumerated in this section thereby submits such person ... to the jurisdiction of the courts of this state, as to any cause of action arising from the doing of any such act:

(1) The transaction of any business within this state;

(2) The making of any contract within this state...

2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo.Rev.Stat. section 506.500 (Supp.1981).

■ While the district court's decision does not specify the subsection upon which the trial court based its finding of jurisdiction under the Missouri Long Arm Statute, we find substantial evidence in the record to support a finding that Barrett transacted business in Missouri within the meaning of the long arm statute. On May 7, 1976, Barrett was in St. Louis, Missouri, to complete the sale of the fleet of cars. At that time Schmitt and Barrett were united in the venture to reap a profit from the resale of the automobiles. Barrett was present when Schmitt paid Larson $45,000 and obtained title to the cars. Barrett returned to Missouri on May 13, 1976, and gave Schmitt a check for $33,500. The trial court considered that transaction a rescission of the original contract. During the May 13, 1976, meeting title to the cars was conveyed from Schmitt to Barrett and a receipt issued to Barrett. It is clear to this court that Barrett's contacts with Missouri are sufficient to give rise to in personam jurisdiction under one or possibly both of the subsections of the Missouri Long Arm Statute quoted above and as interpreted by Missouri courts. *See e.g., Wooldridge v.*

Beech Aircraft Corp., 479 F.Supp. 1041, 1053–56 (W.D.Mo.1979); First National Bank of Kansas City v. Ward, 380 F.Supp. 782, 783–85 (W.D.Mo.1974); American Hoechst Corp. v. Bandy Laboratories, Inc., 332 F.Supp. 241, 243–44 (W.D.Mo.1970); J.F. Prichard & Co. v. Dow Chemical of Canada, Ltd., 331 F.Supp. 1215, 1217–18 (W.D.Mo.1971); State ex rel Farmland Industries v. Elliot, 560 S.W.2d 60, 62–3 (Mo. App.1977); Ponder v. Aamco Automatic Transmissions, Inc., 536 S.W.2d 888, 893 (Mo.App.1976); State ex rel Peoples Bank v. Stussie, 536 S.W.2d 934, 938–39 (Mo.App. 1976); State ex rel Deere & Co. v. Pinnell, 454 S.W.2d 889, 892–93 (Mo.Sup.Ct.1970).

■ Barrett also challenges the district court's judgment on the grounds that Schmitt failed to prove the essential terms of the contract and that what evidence was presented tended to show that the contract was superseded rather than rescinded. When considering such a challenge to the district court's findings of fact, this court is not at liberty to try a case de novo and we must therefore give great deference to the district court's findings of fact. Kaiser Aluminum & Chemical Corp. v. Illinois Central Gulf Railroad Co., 615 F.2d 470, 474 (8th Cir. 1980), citing Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 183 (8th Cir. 1975). The district court's findings of fact must be upheld unless they are clearly erroneous. F.R.C.Pro. 52(a); Southern Illinois Stone Co. v. Universal Engineering, 592 F.2d 446, 451 (8th Cir. 1979); School District N. 54 v. Celotex Corp., 556 F.2d 883 (8th Cir. 1977).

This standard of review does not allow us to substitute our own impressions for those of the district court.

It is not enough that we might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court deemed innocent. * * * We are not given those choices, because our mandate is not to set aside findings of fact "unless clearly erroneous."

Horner v. Mary Institute, 613 F.2d 706, 707, 713 (8th Cir. 1980), citing United States v. National Association of Real Estate Boards, 339 U.S. 485, 495–96, 70 S.Ct. 711, 717, 94 L.Ed.2d 1007 (1950).

■ The trial court made several comments about the paucity of hard evidence in this case. Some of those comments reinforce the applicability of the clearly erroneous standard of review to this case:

(t)here is, also, an almost unbelievable lack of financial documentation concerning the pertinent transactions. * * * Plaintiff failed to produce rudimentary evidence of the contract while defendant relied upon handwritten notes kept by his secretary in a memo book for transactions totaling thousands of dollars. * * * In spite of this lack of clarity and completeness, the Court is called upon to exercise its judgment nonetheless, weighing the available credible evidence and attempting to determine what, in logic and reasoning may be inferred to have occurred, ever bearing in mind that the initial burden of proof rests with the plaintiff.

Charles Schmitt & Co. v. Barrett, 510 F.Supp. 726, 728 (E.D.Mo.1981). Where the trial court's "findings are primarily based upon oral testimony" as they are in this case, "the appellant's burden of showing clearly erroneous findings is especially great." Horner v. Mary Institute, 613 F.2d 706, 707, 713 (8th Cir. 1980), citing St. Louis Typographical Union No. 8 v. Herald Co., 402 F.2d 553, 557 (8th Cir. 1968). In nonjury cases it is the responsibility of the trial judge to pass upon the credibility of witnesses as well as to draw reasonable inferences from the evidence presented. Saturn Oil & Gas Co. v. Northern Natural Gas Co., 359 F.2d 297, 303 (8th Cir. 1966). In the present case Judge Cahill has done just that and we cannot say that his findings are not supported by substantial evidence or founded upon an erroneous conception of the applicable law. Nor are we left with a firm and definite conviction that a mistake has been made. The district court had an opportunity to view the witnesses and assess their credibility. We will not substitute our judgment for that of the trial court.

Barrett's final contention is that the trial court should not have rescinded the contract where the plaintiff did not seek that remedy in its prayer for relief. This point is addressed in the Federal Rules of Civil Procedure and the question has been brought to the attention of this court on other occasions.

Rule 15(b) of the Federal Rules of Civil Procedure provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Rule 54(c) of the Federal Rules of Civil Procedure provides in pertinent part: "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

In the present case both parties presented evidence of rescission. While Barrett now claims that he did not consent to try that issue, Rule 54(c) nonetheless provides that the trial court may grant the relief to which the prevailing party is entitled, regardless of whether such relief was prayed for in the complaint. Where the defendant appears and the parties are at issue, we have held that the final judgment shall grant the relief to which the prevailing party is entitled. *Troutman v. Modlin*, 353 F.2d 382, 385 (8th Cir. 1965). The trial judge decided that Schmitt was entitled to the relief awarded, and we find no error in that decision.

We have examined the other issues raised by Barrett and find them to be without merit. Accordingly, the judgment of the district court is affirmed.