**Norlin G. MOMMSEN, Plaintiff,**

v.

**The TORO COMPANY, et al.,
Defendants.**

**Civ. No. 84–105–D–2.**

United States District Court,
S.D. Iowa, Davenport Division.

Dec. 27, 1985.

Michael J. Warner, Rock Island, Ill., Arthur L. Buzzell, Davenport, Iowa, for plaintiff.

Patricia Rhodes Cepican, Edward B. Harris, Davenport, Iowa, for defendants.

RULING AND ORDER
QUASHING SERVICE

VIETOR, Chief Judge.

This is a products liability diversity action. Defendant Kioritz Corporation, a Japanese corporation, has moved to dismiss or quash service on the ground of insufficiency of service of process.

Plaintiff initially sued only The Toro Company, but by amendment filed June 21, 1985, added Echo, Inc., and Kioritz as defendants. On July 24, 1985, plaintiff attempted to serve Kioritz by serving a summons and amended complaint upon an attorney in Chicago, Illinois, as Kioritz's agent. Kioritz moved to dismiss, submitting an affidavit indicating that the attorney in Chicago was not an agent, officer or employee of Kioritz. (Plaintiff does not dispute the facts set forth in the affidavit.) Plaintiff then filed the summons and complaint with the Iowa Secretary of State and mailed notification of the filing together

with a copy of the summons and complaint to Kioritz in Japan by registered mail, all in compliance with Iowa Code section 617.3, the state's "long arm" statute. Kioritz then supplemented and enlarged its motion to challenge the sufficiency of the new service of process on the ground that it violates the Hague Convention,[1] to which both the United States and Japan are signatories

Kioritz is a corporate citizen of Japan and must be served in compliance with the Hague Convention. "A treaty is a 'Law of the Land' under the supremacy clause (Art. VI, Cl.2) of the Constitution." *United States v. Pink*, 315 U.S. 203, 230, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942). Article 10 of the Hague Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Japan has objected to subparagraphs (b) and (c), but not to subparagraph (a). 28 U.S.C.A., Fed.R.Civ.P. 4, app. at 97 (West Supp.1985). The issue before the court is whether subparagraph (a) permits service of process by mailing a copy of a complaint to a defendant in a signatory nation. Plaintiff argues that it does, and Kioritz argues that it does not.

The issue has been before several courts. At least three courts have held that subparagraph (a) permits service of process by mail directly to a defendant. *Weight v. Kawasaki Heavy Industries, Ltd.*, 597

F.Supp. 1082, 1085–86 (E.D.Va.1984); *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1206 (D.D.C.1984); *Shoei Kako Co. v. Superior Court*, 33 Cal. App.3d 808, 821–22, 109 Cal.Rptr. 402, 411–12 (1973). At least two courts have held to the contrary. *Reynolds v. Koh*, 109 A.D.2d 97, 490 N.Y.S.2d 295 (1985); *Ordmandy v. Lynn*, 122 Misc.2d 954, 472 N.Y. S.2d 274 (N.Y.S.Ct.1984). I am persuaded by the reasoning set forth in the latter cases.

The purpose of the Hague Convention is set forth at its beginning:

The States signatory to the present Convention,

Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,

Desiring to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions.

Articles 2 through 6 provide for service through a central authority in each country. Article 8 provides for service through diplomatic or consular agents of the country of origin unless objected to by a contracting country. (Japan has not objected. 28 U.S.C.A., Fed.R.Civ.P. 4, app. at 97 (West Supp.1985).) Subparagraphs (b) and (c) of Article 10 provide for judicial officers, officials, other competent persons, or any person interested in a judicial proceeding to effect service through judicial officers, officials or other competent persons of the country of destination unless objected to by a contracting country. (As noted above, Japan has objected to both of these subparagraphs.) Article 11 provides that two or more contracting countries may agree on additional methods of service. "The treaty * * * provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can

---

**1.** Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361,

T.I.A.S. No. 6638, *reprinted in* 28 U.S.C.A., Fed. R.Civ.P. 4, app. at 87–101 (West Supp.1985).

effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir.1981).

The provision at issue here, subparagraph (a) of Article 10, does not expressly allow "service" of judicial process by postal channels in signatory nations; it merely permits one to "send" judicial documents by mail to persons abroad. It is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In addition, where a legislative body "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). Finally, where a legislative body "uses terms that have accumulated meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that the [legislative body] means to incorporate the established meaning of these terms." *National Labor Relations Board v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). The Hague Convention repeatedly refers to "service" of documents, and if the drafters of the Convention had meant for subparagraph (a) of Article 10 to provide an additional manner of service of judicial documents, they would have used the word "service." To hold that subparagraph (a) permits direct mail service of process, would go beyond the plain meaning of the word "send" and would create a method of service of process at odds with the other methods of service permitted by the Convention. Sending a copy of a summons and complaint by registered mail directly to a defendant in a foreign country is not a method of service of process allowed by the Hague Convention.

Because some case authority supports plaintiff's second method of serving Kioritz, the court will not now dismiss, but merely quash service.

IT IS ORDERED that both services of process on defendant Kioritz attempted by plaintiff are quashed. Plaintiff is granted until April 25, 1986, within which to properly serve defendant Kioritz in compliance with the Hague Convention. If proper service is not obtained by that date, Kioritz may renew its motion to dismiss.