**HANTOVER, INC., a Missouri corporation, Plaintiff,**

**v.**

**OMET, S.N.C. OF VOLENTIERI & C., an Italian partnership consisting of the following individuals: Sergio Volentieri, Bruno Valiani, Fiorenzo Bardotti, and Manuela Volentieri, Defendants.**

**No. 87–1140–CV–W–JWO.**

United States District Court, W.D. Missouri, W.D.

June 9, 1988.

James F. Davis, Borwn, Koralchick & Fingersh, Overland Park, Kan., for plaintiff.

Joe Rebein, Shook, Hardy & Bacon, Kansas City, Mo., for defendants.

H. Fred Northcraft, Smith, Gill, Fisher & Butts, Kansas City, Mo., for Lawrence Star.

## MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

### I.

The above-styled case is an action brought by a Missouri corporation against an Italian partnership, Omet, and its individual partners for breach of contract in relation to plaintiff's proposed distribution in the United States of a vacuum stuffer machine manufactured by the Italian partnership. The case pends on numerous motions filed by both parties; we deferred ruling the motions pertaining to discovery until decision could be reached on the threshold jurisdictional issues presented by Omet's motion to dismiss. That motion has now been fully briefed, and we turn our attention to consideration of the five grounds for dismissal raised by Omet therein. For the reasons stated, Omet's motion to dismiss will be denied, but its motion to quash will be granted.

### II. MOTION TO DISMISS

#### A. Failure to sue proper parties

Omet initially argues that plaintiff's petition should be dismissed because plaintiff has not brought suit against the proper parties. Plaintiff initiated this action in the Circuit Court of Jackson County, Missouri, naming as defendant "O.M.E.T. Company of Volentieri, I.C., an Italian corporation." After removing the action to federal court,[1] the defendant moved to dismiss on the

---

1. Omet invoked federal jurisdiction by removal from the State court on the basis of diversity of citizenship under 28 U.S.C. § 1332. In its petition for removal, Omet stated in ¶ 5 that "[d]efendant-petitioner OMET, S.N.L. is a resident of Italy...." Omet did not assert its status as a partnership rather than a corporation until it filed its motion to dismiss over a month later.

 Given the fact as later brought to light that Omet was a partnership which under Missouri law may not be sued in its own name, it is arguable that the removal in this case was improper. We conclude, however, that the filing of plaintiff's first amended complaint, which named the individual partners of Omet as defendants, cured the jurisdictional defect and mooted any question as to the propriety of removal.

ground that Omet is a partnership rather than a corporation.

■ On February 25, 1988, plaintiff filed its first amended petition, in which it names the partnership and the individual partners of Omet as defendants in this case.[2] Although this filing mooted the first ground raised by Omet in its motion to dismiss, Omet maintains that the amended petition should not have been filed without leave of court, and that plaintiff's failure to sue the proper party in its original petition is fatal to its cause of action. We disagree.

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." Rule 7(a) clearly distinguishes between pleadings, such as complaints and answers, and motions, such as the motion to dismiss filed in the present case. Because Omet's motion to dismiss is not a responsive pleading under the federal rules, its filing did not vitiate plaintiff's right to file an amended complaint without leave of court under Rule 15(a). *See* 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1483 (1971). Further, Omet has cited no authority for the proposition that a failure to sue the proper party, which has subsequently been remedied by an amended complaint naming proper parties, constitutes grounds for the dismissal of the action. We accordingly conclude that the case may not be dismissed on this ground.

### B. Improper mode of service

Omet next argues that the case must be dismissed pursuant to Rule 12(b)(5) because of insufficient service of process. After filing its initial petition in Missouri state court, plaintiff attempted to serve Omet pursuant to Mo.R.Civ.P. 54.09, which provides for service on foreign corporations through the Missouri Secretary of State. After the case was removed and Omet filed its motion to dismiss, plaintiff effectively conceded that its first petition had been improperly served by filing a motion for court-ordered foreign service, requesting that this Court order service on the partners of Omet under Rule 4(i)(1)(E) of the federal rules. We shall address that pending motion in part III of this memorandum opinion and for the reasons stated in that section, Omet's motion to dismiss shall be denied but its motion to quash shall be granted.

### C. Personal jurisdiction

Omet next argues that it lacks the requisite minimum contacts with Missouri to subject it to this Court's jurisdiction under either the Missouri long-arm statute or the due process clause of the United States Constitution.[3] Determining the propriety of an exercise of personal jurisdiction over a defendant who is not a resident of the forum state is a two-step process. First, the Court must determine whether the exercise of jurisdiction would comport with the requirements of the long-arm statute of the forum state. *See Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 653

**2.** Rule 17(b) of the Federal Rules of Civil Procedure provides that the law of the state in which the district court sits governs the issue of the capacity of a partnership to be sued. *See Day v. Avery,* 548 F.2d 1018, 1022 (D.C.Cir.1976), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977) ("in cases not seeking enforcement of a substantive right existing under the Constitution or a federal law, capacity of a partnership to sue or be sued is determined by reference to the law of the forum State" under Rule 17(b)). Under Missouri law, a partnership may not be sued in its own name. *See 999 v. Cox & Co.,* 574 F.Supp. 1026, 1031 (E.D.Mo.1983); *Baum v. Glen Park Properties,* 660 S.W.2d 723, 725 (Mo. Ct.App.1983). Thus, the only legitimate defendants involved in this case are the individual partners of Omet.

After naming the individual partners in the caption of its first amended petition, plaintiff continues to refer to the partnership as the singular defendant in the case. However, plaintiff's intent to sue the partners as individuals is made obvious by its motion for court-ordered service, which proposes that a copy of the summons and complaint be served by mail on each partner individually. Counsel for Omet also continues to refer to "defendant" in the singular, perhaps in an effort to discount the validity of plaintiff's amended complaint, an issue dealt with in the text.

**3.** Our task at this point is, of course, to determine whether the *partners* of Omet had sufficient contacts with Missouri to subject them to long-arm jurisdiction within the state.

(8th Cir.1982). Second, the Court must ascertain whether minimum contacts exist between each defendant and the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice under the due process clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Once personal jurisdiction has been challenged, the plaintiff must make a prima facie showing of facts to support the exercise of personal jurisdiction. The burden then shifts to the party challenging the exercise to show that the court lacks jurisdiction. *See Wines v. Lake Havasu Boat Manufacturing, Inc.,* 846 F.2d 40, 41–42 (8th Cir.1988) (per curiam).

The Missouri long-arm statute, Mo.Ann. Stat. § 506.500 (Vernon Supp.1988), confers jurisdiction over a person as to any cause of action arising from his transaction of any business within the state, his entering into any contract within the state, or his commission of a tortious act within the state. The scope of the statute was meant to be as broad as is consistent with the dictates of due process. *See State ex rel. Deere and Co. v. Pinnell,* 454 S.W.2d 889, 892 (Mo.1970) (en banc).

Plaintiff argues that the Omet partners are subject to this Court's jurisdiction under the "transacting business" prong of the Missouri long-arm statute. In support of that contention, plaintiff attaches to its suggestions in opposition to the motion to dismiss an affidavit executed by Bernard G. Huff, president of plaintiff,[4] and the deposition of Robert W. Fillmore, vice-president of Koch Supplies, Inc., a company with which plaintiff claims Omet is now doing business.

Huff's affidavit chronicles the negotiations that took place between plaintiff and Omet during 1986 and 1987 with regard to plaintiff's proposed distribution of machines manufactured by Omet. Paragraph 4 of that affidavit states that "[i]n July 1987, Sergio Volentieri and Bruno Valiani [both of whom are partners] of Omet traveled from Italy and met with me in the offices of Hantover in Kansas City, Missouri." Huff states in paragraph 5 that Omet "caused one of the Machines to be shipped and delivered to Hantover in Kansas City, Missouri" and that "Hantover's representatives escorted Omet's partners to Wisconsin and other U.S. locations to assess potential competition for their machines and to promote distribution thereof." Huff further states in paragraph 6 that Hantover performed certain acts in Missouri that constituted acceptance of the distributorship agreement.

Omet argues that plaintiff has shown only its own unilateral activities, activities of Omet unrelated to plaintiff's cause of action, and "incidental contacts," which are insufficient to satisfy either the Missouri long-arm statute or constitutional due process. We disagree.

■ We conclude that the acts enumerated in Huff's affidavit, which are not disputed by Omet, constitute the transaction of business under the Missouri long-arm statute. In *State ex rel. Metal Service Center v. Gaertner,* 677 S.W.2d 325, 327 (Mo.1984) (en banc), the Missouri Supreme Court directed that the "transaction of any business" prong of the Missouri long-arm statute must be construed broadly. The Court noted that the "business may consist of a single transaction, if that is the transaction sued upon." The Court held that the defendant in that case had transacted business in Missouri "by shipping materials into this state for work by [plaintiff] and retaking them after the work had been done." *Id.*

4. Numerous documents are also attached to Huff's affidavit, including letters from Omet partners and invoices issued by Omet. Although none of those documents is marked as an exhibit or incorporated by reference, Omet has not objected to the authenticity of any of the documents.

In an earlier case, Judge Collinson of this Court faced the question "whether ... one conference within the state of Missouri subjects defendant corporations to jurisdiction of the courts of this state." *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241, 243 (W.D.Mo.1970). After noting the trend toward liberal construction of the business transaction prong, the Court concluded that jurisdiction was properly exercised because the one business conference between the representatives of the parties that had taken place in Missouri "was preliminary to the execution of a contract between the parties out of which this suit directly arose."

Other Missouri cases have also held that a single meeting within Missouri may constitute the transaction of business within the meaning of the Missouri long-arm statute. In *Watlow Electric Manufacturing Co. v. Sam Dick Industries, Inc.*, 734 S.W. 2d 295 (Mo.Ct.App.1987), the out-of-state defendant had communicated on numerous occasions by telephone and mail with the Missouri plaintiff and had sent its chief engineer to Missouri to finalize the design of a product defendant proposed to buy from plaintiff. The Court held that "[t]his single meeting is sufficient to satisfy the transaction of business requirement of Section 506.500." *Id.* at 298; *see also Charles Schmitt & Co. v. Barrett*, 670 F.2d 802, 804 (8th Cir.1982); *State ex rel. Farmland Industries, Inc. v. Elliott*, 560 S.W.2d 60, 63 (Mo.Ct.App.1977).

Although each of the above-cited cases involved contracts which had either been entered into already at the time of the meeting or which were ultimately entered into, the fact that the plaintiff here has not proven the existence of a contract between itself and the Omet partnership does not change the applicability of the analysis found in those cases. For the focus of both the Missouri cases and the federal cases applying the Missouri long-arm statute is on the fact that the cause of action arose in each case from the meetings and negotiations within Missouri. It is clear that the litigation in this case arose out of the negotiations that took place both in writing, over telefax channels,[5] and in an in-person meeting between representatives of plaintiff and two Omet partners. We therefore conclude that an exercise of personal jurisdiction over the Omet partners is within the purview of the "transaction of any business" prong of the Missouri long-arm statute.[6]

Further, an exercise of personal jurisdiction over the Omet partners comports with the requirements of the due process minimum contacts standard articulated in *International Shoe* and its progeny. *See, e.g., Helicopteros, supra; Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–475, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528 (1985). Due process minimum contacts analysis focuses on the "relationship among the defendant, the forum, and the litigation." *Helicopteros, supra*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), *quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

The Eighth Circuit has directed that courts consider five factors when applying the minimum contacts due process standard:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the

---

5. Under the applicable precedents, it is clear that written correspondence and telephone communication alone would not constitute minimum contacts sufficient to satisfy the Missouri long-arm statute or constitutional due process. *See Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir.1984); *see also Wines, supra*, 846 F.2d at 42. We conclude, however, that the in-state meeting coupled with those contacts satisfies both statutory and constitutional requirements.

6. Because the two Omet partners who traveled to Missouri for the meeting with plaintiff's representatives were conducting partnership business, they acted as agents for the partners who remained in Italy. *See Martin v. Yeoham*, 419 S.W.2d 937, 950 (Mo.Ct.App.1967) ("Each partner acts as a principle for himself and as an agent for the firm and for his copartners in respect of partnership matters."). *See also* Mo. Rev.Stat. § 358.090 (Uniform Partnership Act).

contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.[7]

*Land–O–Nod Co. v. Bassett Furniture Industries, Inc.,* 708 F.2d 1338, 1340 (8th Cir.1983). The Eighth Circuit has further directed that

unilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and 'it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] (1958) ... For it is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum.

*Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 455–56 (8th Cir.1984).

The contacts between the Omet partners and the forum state of Missouri clearly meet the five-factor test articulated by the Eighth Circuit. The meeting held in Missouri between representatives of plaintiff and two Omet partners, acting in behalf of the partnership, was directed toward negotiations concerning plaintiff's United States distributorship of Omet's product. That meeting, especially when considered in conjunction with the correspondence between the parties and Omet's subsequent shipment of its product to Missouri (*see Gaertner, supra*) was qualitatively and quantitatively sufficient to support jurisdiction. Further, the dispute in this case clearly arose out of those contacts. Finally, Missouri has an interest in providing a forum for its local corporations with regard to the conduct of their business and, as we will discuss in part III *infra,* the convenience of

the parties weighs in favor of the exercise of jurisdiction here.

Moreover, the Omet partners' active participation in the negotiations demonstrates that they purposely availed themselves of the privilege of conducting activities within the state of Missouri. *See Electro–Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 369 (8th Cir.1969). We conclude that due process is not offended by this Court's exercise of personal jurisdiction over the Omet partners in this case.[8]

### D. Venue

■ Omet next argues that plaintiff's petition must be dismissed for improper venue, contending that plaintiff must demonstrate that Omet was "doing business" within this district to come within the purview of 28 U.S.C. § 1391. However, the "doing business" test in the venue statute is applicable only to corporations (28 U.S.C. § 1391(c)); Omet's position that the "doing business" test must be met for venue purposes is obviously quite inconsistent with the assertion made in the first section of its motion that it is in fact a partnership rather than a corporation.

Moreover, this case falls under the provisions of Section 1391(d), which provides that an alien may be sued in any district. Because each defendant named in plaintiff's first amended complaint is a resident of Italy (*see* affidavit of Sergio Volentieri, attached as Exhibit A to Omet's motion to dismiss, at ¶ 3), Section 1391(d) applies and venue is properly in this Court.

### E. Forum non conveniens

Finally, Omet argues that plaintiff's action must be dismissed under the doctrine of forum non conveniens. In *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court noted that a federal court may invoke the principle of forum non conveniens to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Id.* at 507, 67 S.Ct. at 842. The Court directed that to determine

---

**7.** This five-factor list originated in Judge, now Justice, Blackmun's opinion in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965).

**8.** Our holding that personal jurisdiction over the Omet partners may properly be exercised in this Court is subject, of course, to plaintiff's obtaining proper service on them. *See* part III, *infra.*

whether a particular case is "one of those rather rare cases where the doctrine should be applied" (*id.* at 509, 67 S.Ct. at 843), courts should weigh a variety of private and public factors, including private interest in the relative ease of access to sources of proof and other practical problems, and the public interest factor of "local interest in having localized controversies decided at home." *Id.* The Court admonished that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. And, in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981), the Court noted that the "forum non conveniens determination is committed to the sound discretion of the trial court."

■ We find and conclude that the doctrine of forum non conveniens should not be invoked under the facts and circumstances presented by this case. Omet has offered no evidence to support its conclusory statement that the witnesses and documents involved are in Italy.[9] Rather, the evidence concerning the negotiations between the parties will be centered in Kansas City as well as in Italy. Further, problems of translation would be just as severe, if not more severe, if plaintiff were to be forced to try the case in Italy. Finally, plaintiff's choice of forum in its home state is entitled to great deference, especially in light of the public's interest in decision of localized controversies. *See Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843; *cf. Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. at 266 (foreign plaintiff's choice deserves less deference).

We accordingly reject the last ground asserted by Omet in support of its motion to dismiss and conclude that the motion to dismiss must be denied. We therefore turn our attention to plaintiff's motion for court-ordered service pursuant to Rule 4 of the Federal Rules of Civil Procedure.

## III. MOTION FOR COURT–ORDERED FOREIGN SERVICE

Service of process in federal courts is governed by the provisions of Federal Rule of Civil Procedure 4. This rule also governs service to be made in cases removed to federal court when the previous service made in state court turns out to be defective. *See* 28 U.S.C. § 1448. Plaintiff's initial attempt at service pursuant to the Missouri statute was defective because it sought to utilize the rule governing service on foreign corporations, when in fact the defendants in this case are partners in a partnership.

Plaintiff seeks to have this Court direct service of process under Rule 4(i)(1)(E) by authorizing plaintiff to deposit copies of the summons and complaint, along with copies of each translated into Italian, in the United States mail addressed to each partner at the business address of Omet. Omet argues that because Italy is a signatory of the Hague Convention treaty (Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361–367 (1969)), Rule 4(i) may not be utilized to obtain service of process.

No definite rule has emerged in the federal courts to resolve the tension between Rule 4(i), which authorizes several methods of service upon foreign defendants, and the Hague Convention treaty, which specifies methods of service to be made upon citizens of countries that are parties to that treaty.[10] However, many courts have required that the provisions of the treaty be followed to effect proper service upon a defendant who resides in a signatory coun-

---

9. Indeed, many of the documents reflecting the parties' negotiations have already been attached to Huff's affidavit and are in English. It is also reasonable to assume that representatives of plaintiff, who are located in Missouri, will be called to testify in the case.

10. Neither Rule 4(i) nor the Hague Convention treaty provides authorization for extraterritorial service—such authorization must come in a di-

versity case from the long-arm statute of the state in which the district court sits. Rule 4(i) and the Hague Convention treaty merely prescribe mechanisms by which service on foreign defendants may be accomplished. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 289 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).

try. *See* J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.45 (2d ed. 1987) ("While there have been district court cases holding that service of process in a foreign country pursuant to Rule 4(i) was deficient for failure to comply with the Hague Convention provisions, it is by no means settled that Rule 4(i) has been superseded."); *cf. Teknekron Management, Inc. v. Quante Fernmeldetechnik GmbH,* 115 F.R.D. 175, 176 (D.Nev.1987) ("When an American plaintiff attempts to serve a party located within one of the countries which is a signatory to the Hague Convention, service must be effected strictly according to the procedures set forth in that treaty.").

■ We find and conclude that plaintiff should be required to effect service in this case in accordance with the requirements of the Hague Convention treaty. *See Richardson v. Volkswagenwerk, A.G.,* 552 F.Supp. 73, 79 (W.D.Mo.1982) (Clark, J.) (refusing to allow service of process by registered mail pursuant to federal statute because such service would conflict with the requirements of the Hague Convention). Such service in this case would not impose an onerous burden on plaintiff,[11] and would in fact better facilitate its enforcement of any judgment it may recover in the case.

■ Plaintiff argues, however, that its proposed method of service by mail comports with the requirements of the Hague Convention, citing Article 10(a) of the Treaty. Article 10 provides that "Provided the State of destination does not object, the present Convention shall not interfere with —(a) the freedom to send judicial documents, by postal channels, directly to persons abroad...." Omet argues that Article 10(a) does not authorize a separate method of service acceptable under the treaty. We agree.

In *Pochop v. Toyota Motor Co.,* 111 F.R.D. 464 (S.D.Miss.1986), the Court con-

sidered the question whether Article 10(a) authorized service by mail upon a Japanese defendant when Japan, a signatory to the treaty, had not specifically objected to Article 10(a). The Court followed the reasoning in *Mommsen v. Toro Co.,* 108 F.R.D. 444 (S.D.Iowa 1985), to hold that "service by direct mail is not permitted under the Hague Convention." 111 F.R.D. at 466. The *Mommsen* court had explained that Article 10(a) "merely permits one to 'send' judicial documents by mail to persons abroad ... The Hague Convention repeatedly refers to 'service' of documents, and if the drafters of the Convention had meant for subparagraph (a) of Article 10 to provide an additional manner of service of judicial documents, they would have used the word 'service.'" 108 F.R.D. at 446. We find this construction to be especially cogent when subparagraph (a) of Article 10 is compared to subparagraphs (b) and (c) of the same article, since the latter both refer to the freedom to "effect service of judicial documents" through alternative channels.[12]

Our conclusion that plaintiff must effect service on the Omet partners pursuant to the Hague Convention through the Central Authority designated by Italy requires that we grant the motion to quash service in this case. It is appropriate, however, that plaintiff be afforded an opportunity to effect proper service under the Convention. *See Vorhees v. Fischer & Krecke,* 697 F.2d 574, 576 (4th Cir.1983) (action should not be dismissed until plaintiffs given a reasonable opportunity to attempt to effect valid service of process under the Hague Convention); *Pochop, supra,* 111 F.R.D. at 467 (plaintiff granted 45 days to effect service in accordance with Hague Convention).

## IV. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

■ Plaintiff has moved pursuant to Fed.R.Civ.P. 15(a) for leave to file a second

---

**11.** Indeed, plaintiff states on page 18 of its suggestions that it "stands ready to serve the petition pursuant to the Hague Convention if its Rule 4(i)(1)(E) motion is denied."

**12.** In so concluding, we reject the assumption apparently made by the State Department that service of process by mail on Italian defendants

may sometimes be adequate. *See* State Department publication attached as Exhibit A to plaintiff's reply to defendant's response to plaintiff's motion for court-ordered service. Indeed, the publication itself states that the "Department does not guarantee" the accuracy of the information contained therein.

amended petition, which does not add any new or different parties or claims for relief. Instead, the second amended petition simply corrects technical defects in the first amended petition.

In its response to plaintiff's motion for leave to file its second amended petition, Omet does not specifically object to the filing of the second amended petition or indicate that the changes contained therein would in any way prejudice it. It instead incorporates by reference its earlier response to plaintiff's first amended petition. That earlier response presented the erroneous argument that plaintiff's first amended petition should not have been filed without leave of court because Omet's motion to dismiss constituted a responsive pleading under Rule 15(a). *See supra,* part IIA.

Rule 15(a) directs that leave to amend a party's pleadings "shall be freely given when justice so requires." Since Omet has pointed to no fact indicating that justice would not best be served by allowing an amendment that simply corrects technical defects in the first amended petition, we find and conclude that leave to file the second amended complaint should be granted.[13]

## V. MOTION FOR SANCTIONS PURSUANT TO RULE 11

■ Finally, plaintiff has moved the Court for an order imposing sanctions upon Omet and its attorneys on the ground that Omet's motion to quash and/or dismiss was not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" within the meaning of Rule 11. We conclude that plaintiff's motion for sanctions must be denied.

Plaintiff's motion seems especially inappropriate in the face of its apparent concessions that it failed to name the proper defendants in its initial petition and that its attempt at service of that petition was improper. This Court declines to impose sanctions under the circumstances of this case.

For the reasons stated, it is

ORDERED (1) that the motion to dismiss should be and is hereby denied. It is further

ORDERED (2) that the motion to quash service of process should be and is hereby granted. It is further

ORDERED (3) that plaintiff is hereby granted forty-five (45) days from the date of this order to effect proper service on the Omet partners under the provisions of the Hague Convention. It is further

ORDERED (4) that plaintiff's motion for court-ordered service should be and is hereby denied. It is further

ORDERED (5) that plaintiff's motion for leave to file second amended petition should be and is hereby granted. The Clerk of this Court is hereby directed to file plaintiff's second amended complaint. It is further

ORDERED (6) that plaintiff's motion for sanctions should be and is hereby denied. It is further

ORDERED (7) that the motion to stay or limit discovery should be and is hereby denied as moot. The parties are hereby directed to prepare, submit and file a proposed order scheduling discovery in accordance with the notice issued by this Court on January 5, 1988 within thirty (30) days of the date service is effected on all defendants pursuant to Order (3) above.

---

13. We note that neither of plaintiff's amended petitions properly alleges jurisdictional facts under 28 U.S.C. § 1332 as required by Fed.R.Civ.P. 8(a). However, by removing the case to federal court, Omet has, of course, implicitly acknowledged that the case could have been originally commenced in federal court. *See also* Affidavit of Sergio Volentieri, attached as Exh. A to Omet's motion to dismiss.

The parties should consider whether an additional amendment should be made by agreement to the second amended complaint to set forth specific jurisdictional facts in compliance with Rule 8(a).