**Edwin SMITH, et ux., Plaintiffs,**

v.

**DAINICHI KINZOKU KOGYO CO., LTD., Dainichi Machinery, Inc., and Machinery Sales Co., Inc., and Gomiya USA, Defendants.**

**Civ. A. No. A–87–CA–275.**

United States District Court,
W.D. Texas,
Austin Division.

Feb. 23, 1988.

Gordon Gunter, Austin, Tex., for plaintiffs.

Leslie A. Benitez, Clark, Thomas, Winters & Newton, Austin, Tex., for defendants.

## ORDER

WALTER S. SMITH, Jr., District Judge.

In this diversity action, Defendants Dainichi Kinzoku Kogyo Co., Ltd., Dainichi Machinery, Inc., and Machinery Sales Co., Inc. move the Court to dismiss the Plaintiffs' cause-of-action against them for lack of personal jurisdiction. They argue, *inter alia,* failure of the Plaintiffs to effect proper service of process, lack of jurisdiction pursuant to the Texas Long Arm Statute, and lack of jurisdiction under the Due Process Clause of the United States Constitution.

### Facts

On April 16, 1985, Plaintiff Edwin Smith suffered injuries to his face when the engine lathe he was using was inadvertently started by a co-worker, causing a metal work-piece to fly from the lathe injuring the left side of Mr. Smith's face. The Plaintiffs filed this cause-of-action alleging strict product liability, and negligence in designing, manufacturing, and selling an engine lathe with a safety mechanism made of plastic rather than a more durable material. Plaintiffs originally filed their complaint in Texas state court in Williamson County, Texas, the accident having occurred in Cedar Park, Williamson County, Texas. There being complete diversity of citizenship of the parties, the Defendants removed the case to this Court. Removal jurisdiction is uncontested.

The lathe at issue was manufactured in Japan by Defendant Dainichi Kinzoku Kogyo Co., Ltd. (Dainichi–Japan) which sold the lathe, in Japan, to a Japanese export company (Gomiya Japan). Gomiya Japan, which is not a party to this suit, then sold it to their American subsidiary Gomiya USA, Inc., to be imported into the United States. Gomiya USA sold the lathe to an American machine tool retailer, Machinery Sales Co., Inc., which is a California corporation that does business exclusively in California, Arizona, and Nevada. Ultimately, Machinery Sales Co. sold the lathe to Martin–Decker, the Plaintiff's employer, in California. Thereafter, Martin–Decker transported the lathe to its machine shop in Cedar Park, Texas where Plaintiff Edwin Smith was injured.

### Service of Process

■ Movants initially argue that this Court lacks personal jurisdiction over them due to the failure by Plaintiffs to properly effect service of process upon them. Defendants Dainichi–U.S. and Machinery Sales Co. argue that service of process was insufficient as to them in that they do not have a registered agent for service of process in Texas and, therefore, have presumably designated the Texas Secretary of State as their agent for service of process. They contend that the Texas Long Arm Statute, specifically Tex.Civ.Prac. & Rem. Code § 17.044(a) (Vernon 1988), and Fed.R. Civ.P. 4(e) "require" service through the Texas Secretary of State rather than directly through the mails. However, the provisions of Section 17.044(a) are for *substituted* service on the Secretary of State. Section 17.044(a) is not intended to be a mandatory method of service which must be pursued before pursuing the method authorized by Tex.R.Civ.P. 106 and 108. Nothing in the language of Section 17.044(a) *requires* a party to use substituted service, rather, it is an alternative to the methods for service on non-residents allowed under Tex.R.Civ.P. 108. Here, Plaintiffs elected to serve Defendants Dainichi–U.S. and Machinery Sales Co. directly pursuant to Tex. R.Civ.P. 108 rather than using substituted service under Section 17.044(a). The Court finds it curious that Defendants complain of the use of a method of service which is more direct, reliable, and efficient than substituted service (which often amounts to constructive service) rather than the actual service which was had in this case. Consequently, the Court concludes that since Plaintiffs complied with the requisites of Tex.R.Civ.P. 108 service of process upon Defendants Dainichi–U.S. and Machinery Sales Co. was duly perfected and these defendants were properly served.

Service upon the foreign Defendant Dainichi–Japan presents a different question, however. Dainichi–Japan argues that

Plaintiffs were required to comply with provisions of the Convention on the Service Abroad of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 361 T.I.A.S. 6638, 658 U.N.T.S. 163 [hereinafter "Hague Convention"], to which both the United States and Japan are signatories, and that by mailing the untranslated summons and complaint to Dainichi–Japan's president by registered mail, Plaintiffs failed to perfect service under the Hague Convention.

Article 10 of the Hague Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad;

(b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination;

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Convention On the Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, Nov. 15, 1965, art. 10, 20 U.S.T. 361, 361 T.I.A.S. 6638, 658 U.N.T.S. 163.

■ Dainichi–Japan argues that since Japan expressly rejected the type of service authorized by Art. 10(b) and (c) which use the words "effect service" and ratified only Art. 10(a) which uses the word "send" that Japan intended to draw a distinction between judicial documents sent through the mails for the purpose of "service" and those for "other" purposes. Plaintiffs con-

cede that they are required to comply with the provisions of the Hague Convention,[1] however, they argue that Art. 10(a) authorizes the "sending" of a complaint and summons directly to a Japanese defendant by registered mail.

■ Although Dainichi–Japan has cited this Court to two New York state court decisions which appear to have adopted the rather hyper-technical interpretation proposed by Dainichi–Japan,[2] federal courts which have addressed this issue have consistently concluded that the use of the word "send" rather than "service" in Art. 10(a) "must be attributed to careless drafting." *Ackermann v. Levine*, 788 F.2d 830, 839 (2nd Cir.1986) (quoting 1 B. Ristau, International Judicial Assistance (Civil and Commercial) §§ 4–10 at 132 (1984)); *see also Zisman v. Sieger*, 106 F.R.D. 194 (N.D.Ill.1985); *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F.Supp. 1082, 1085–86 (E.D.Vir.1984); *Chrysler Corporation v. General Motors Corporation*, 589 F.Supp. 1182, 1206 (D.D.C.1984). Thus, there is no significant distinction to be drawn between the use of "send" in Art. 10(a) and the words "effect service" in Art. 10(b) and (c). Allowing such a distinction to prohibit service of process directly by mail under Art. 10(a) would be to elevate form over substance. This is because "[t]he reference to 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service." *Ackermann*, 788 F.2d at 839 (quoting *Shoei Kako v. Superior Court*, 33 Cal.App.3d 808, 109 Cal.Rptr. 402 (1973)). Since Japan did not reject Art. 10(a), "Japan has not declared that it objects to service through postal channels." Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, at 112 (1983). Therefore, this

---

1. As a self-executing treaty, the Hague Convention is law of equal dignity with acts of Congress, and where the two conflict the latter in time prevails. *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575–76 (4th Cir.1983). Thus, the Hague Convention controls service on a foreign

defendant since it was ratified (1969) after Fed. R.Civ.P. 4(i) was enacted (1963). *Id.*

2. *Reynolds v. Koh*, 109 A.D.2d 97, 490 N.Y.S.2d 295 (N.Y.1985); *Ordmandy v. Lynn*, 122 Misc.2d 954, 472 N.Y.S.2d 274 (N.Y.Sup.Ct.1984).

Court is of the opinion that Plaintiffs' service of process directly upon Dainichi–Japan by registered mail was sufficient to comport with Art. 10(a) of the Hague Convention.

### Personal Jurisdiction

Defendants also argue that this Court lacks personal jurisdiction over them pursuant to the Texas Long Arm Statute and federal constitutional due process requirements. Initially, it should be noted that while Defendants attempt to argue that the Texas Long Arm Statute, Tex.Civ.Prac. & Rem.Code § 17.042 *et seq.* (Vernon 1987), has certain requirements which are distinct from and more strict than constitutional due process requirements, it is well-settled that the Texas Long Arm Statute reaches as far as constitutionally allowed and, therefore, the inquiry under the Texas Long Arm Statute collapses into and becomes a part of the constitutional due process inquiry. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373 (5th Cir.1987); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex.1985); *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). Consequently, since the Texas Long Arm Statute extends to the limits of due process, the inquiry here is solely whether the exercise of jurisdiction over the Defendants comports with the constitutional requirements of due process. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986).

The first step in analyzing this question is to note that the Plaintiffs bear the burden of establishing that jurisdiction exists over the Defendants. *Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1332–33 (5th Cir.1986). However, this burden is met, in this case, by the Plaintiffs making a *prima facie* showing of the facts upon which jurisdiction is based. *Id.* In reviewing the jurisdictional facts of this case, the Court has relied on the Plaintiffs' pleadings as well as affidavits submitted by all parties. *See id.*

The constitutional due process inquiry consists of two elements:

1) the non-resident must have some minimum contact with the forum which results from an affirmative act on the part of the non–resident; and

2) it must be fair and reasonable to require the non-resident to defend the suit in the forum state.

*Burger King Co. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1333 (5th Cir.1986).

The first of these elements is designed to ensure that individuals have " 'fair warning' that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2182 "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* The non-resident defendant's conduct and connection with the forum state must be such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In defining what a non-resident defendant should "reasonably anticipate," the Supreme Court has consistently turned to the reasoning set out in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Id.; Burger King*, 471 U.S. at 474–475, 105 S.Ct. at 2183.

The second element of the due process inquiry forbids a court from exercising per-

sonal jurisdiction over a non-resident defendant under circumstances that would offend "traditional notions of fair play and substantial justice" even if minimum contacts are found to exist. *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* —— U.S. ——, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In making this determination of whether the exercise of jurisdiction is reasonable under the circumstances, the Court is to look to the following factors:

1) the burden on the defendant;
2) the interests of the forum state;
3) the plaintiff's interest in obtaining relief; and
4) the shared interests of the several states in furthering fundamental social policies.

*Asahi,* —— U.S. ——, 107 S.Ct. at 1034; *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564.

 With this legal framework in mind, the Court now turns to an examination of the jurisdictional facts of this case. With respect to the manufacturer, Dainichi–Japan, the preliminary inquiry is whether the exercise of jurisdiction is "specific" or "general." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "Specific jurisdiction" is present where the cause-of-action relates to or "arises out of" the defendant's contact with the forum state, and the minimum contacts requirement is satisfied, even if the contact is a single act, as long as the contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff or third person. *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84; *Bearry v. Beech Aircraft Corporation,* 818 F.2d 370, 374 (5th Cir.1987). "General jurisdiction" over non-resident defendants may be exercised when the cause-of-action does not arise from or relate to the defendant's purposeful contacts with the forum if the defendant's contacts with the forum state are sufficiently *continuous and systematic.* *Helicopteros,* 466

U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Bearry,* 818 F.2d at 374.

 The undisputed facts in this case indicate that Dainichi–Japan is not registered to do business in Texas, does not have an office, agent, or employee in Texas, and does not sell its products or conduct any business in Texas. It is also undisputed that the lathe in question was not sold to Mr. Smith's employer in Texas, but was sold in California and transported to Texas by Mr. Smith's employer Martin–Decker. Under these circumstances, specific jurisdiction, together with its reduced requirement for the amount of defendant contact with the forum state, cannot be exercised unless the Court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Bearry,* 818 F.2d at 374 (citing *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Here, Defendant Dainichi–Japan sold its lathes to a Japanese distributor in Japan, which then transported the lathes to the United States and distributed the lathes to independent, regional retail distributors with limited sales areas. It is undisputed that the lathe in question in this case was sold by a regional retailer which serves only the states of California, Arizona, and Nevada. Dainichi–Japan neither owned or controlled the distribution of its products in the United States. In sum, there is simply no evidence to suggest that Dainichi–Japan manufactured, sold and placed into the stream of commerce the allegedly defective lathe at issue here with the *expectation* that it would be purchased by or used by Texas consumers. Thus, this Court may not, constitutionally, exercise jurisdiction over Dainichi–Japan based on notions of "specific jurisdiction." *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567.

 With respect to "general jurisdiction," a defendant must have more contact with the forum state and that contact must be sufficiently continuous and systemic because the forum state has no direct interest in the cause-of-action. *Bearry,* 818 F.2d at

374. The only facts which the Plaintiffs have marshalled to support general jurisdiction in this case are that Dainichi–Japan's products are advertised in Texas, at least to some extent, and a number of its lathes have found their way into the Texas market, although Plaintiffs fail to establish how. These facts, alone, will not support the exercise of general jurisdiction. "General jurisdiction" is founded on the notion that where a defendant's contact with a forum state are such that the defendant is purposefully invoking the benefits and protections of a forum state's laws he has constructively consented to being sued there. *Bearry*, 818 F.2d at 375. The mere fact that Dainichi–Japan's advertising appears in Texas cannot support the exercise of general jurisdiction. *Bearry*, 818 F.2d at 376 ( ... that Beech has engaged in a nation-wide advertising program does not support a finding of general jurisdiction). Also, the fact that Dainichi–Japan's lathes have found their way into Texas, without more, cannot justify a finding of general jurisdiction. *Id.* In weighing the significance of the conjunction of these two facts in this case, this Court is of the opinion that Dainichi–Japan's contacts with the State of Texas are not sufficiently continuous and systemic as to conclude that it has purpsefully invoked the benefits and protections of Texas law.

Moreover, it is well-settled that where a controversy involves a non-resident manufacturer and an injury caused by its product, as here, courts have consistently adhered to the following rule:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). ■ The rule has been construed to mean that a defendant must "purposefully avail" himself of the privilege of conducting business in the forum state and without this "purposeful availment" a defendant will not be haled into a jurisdiction solely as a result of the "unilateral activity of another party or a third person." *Burger King*,

471 U.S. at 475, 105 S.Ct. at 2183 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Since *World–Wide Volkswagen v. Woodson*, the Supreme Court has rejected the argument that a consumer's unilateral act of bringing a defendant's product into the forum state is a sufficient constitutional basis for personal jurisdiction. *Asahi Metal Industry Co. v. Superior Court of California*, —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). It is undisputed in the present case that the consumer—Martin–Decker—bought the lathe in question in California and later transported it to Texas. Thus, this lathe came into Texas solely because of the unilateral act of Martin–Decker, Mr. Smith's employer. Dainichi–Japan had no part in bringing the lathe that injured Mr. Smith into Texas. Dainichi–Japan had no reason to *expect* that this lathe would be moved by Martin–Decker to Texas. Therefore, this Court cannot exercise personal jurisdiction over Dainichi–Japan where the only significant contact that the Plaintiffs have established that Dainichi–Japan has with Texas—that its product injured someone in Texas—was the result of the unilateral act of a third party.

Since the Court has determined that jurisdiction is lacking under a due process "minimum contacts" analysis it is unnecessary to address whether the exercise of jurisdiction would comport with "fair play and substantial justice." Consequently, this Court declines to express any opinion on this issue.

■ Turning to the question of personal jurisdiction over Machinery Sales Co., it is undisputed that Machinery Sales Co. is a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California. It sells machine tools at the retail level in California, Arizona, and Nevada including engine lathes manufactured by Dainichi–Japan. Plaintiffs do not dispute that Machinery Sales Co. is not registered to do business in Texas, maintains no office in Texas, and has no officer, agent, or employee in Texas. Machinery Sales Co. has never sold an engine lathe to

a Texas customer, entered into a contract with a Texas resident to be performed in Texas or conducted any business or advertising in Texas. In fact, the only connection between Machinery Sales Co. and Texas is that Machinery Sales sold the lathe which injured Mr. Smith to Martin–Decker in California which Martin–Decker later moved to Texas. Thus, Machinery Sales Co. comes directly under the rule of *World–Wide Volkswagen* and progeny that due process minimum contacts cannot be generated solely by the unilateral activities of the plaintiff or a third person. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Asahi Metal Industry Co. v. Superior Court of California*, — U.S. —, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Machinery Sales Co. has not "purposefully availed" itself of conducting any kind of activities in Texas, and Plaintiffs cannot base jurisdiction over Machinery Sales Co. solely upon the unilateral act of Martin–Decker. In no sense can it be said that Machinery Sales Co. could reasonably have anticipated being haled into court in Texas. Therefore, this Court finds that it lacks personal jurisdiction over Defendant Machinery Sales Co.

■ Defendant Dainichi Machinery, Inc. (Dainichi–U.S.) does not challenge the exercise of personal jurisdiction over it on constitutional due process grounds, however, it does move to dismiss the Plaintiffs' claim against it for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Dainichi–U.S. is a wholly owned subsidiary of Dainichi–Japan which is in the business of repairing and supplying replacement parts for tools manufactured by Dainichi–Japan. Plaintiffs' complaint sounds in strict product liability and negligence for manufacture and sale of a defective engine lathe. However, Plaintiffs do not contend that Dainichi–U.S. manufactured, sold, or had any connection whatsoever with the manufacture or sale of the lathe involved here. In fact, Dainichi–U.S. does not manufacture or sell lathes at all. It repairs them and supplies replacement parts for them, but it is uncontroverted by Plaintiffs that Dainichi–U.S.

never repaired or supplied any part for the lathe that injured Mr. Smith or had any connection with this lathe whatsoever. Clearly then, Plaintiff has failed to state a claim against Dainichi–U.S. under strict product liability or negligence. *Simien v. S.S. Kresge Co.*, 566 F.2d 551 (5th Cir.1978) ("Sale of the product in question by the defendant is an essential element of a products liability case."); *see also* Restatement (Second) of Torts § 402A; *Gideon v. Johns–Manville Sales Corporation*, 761 F.2d 1129 (5th Cir.1985) ("An actionable tort, whether based on negligence or strict liability, consists of two elements: a failure to act in accordance with the standard of care required by law and a resultant injury.") Here, it is uncontroverted that Dainichi–U.S. neither sold the lathe in question *nor* failed to act in accordance with due care in any manner that injured Plaintiff Edwin Smith. Thus, Plaintiffs have failed to state a claim against Dainichi–U.S.

■ However, Plaintiffs argue that Dainichi–U.S. is the alter-ego of Dainichi–Japan and that this Court should pierce the corporate veil to 1) hold Dainichi–U.S. liable for the acts of Dainichi–Japan and 2) impute the contacts of Dainichi–U.S. with Texas to its parent company Dainichi–Japan for the purposes of personal jurisdiction. In order for a court to disregard the corporate fiction in Texas and hold a parent liable for the acts of its subsidiary, the Plaintiff has the burden of proving that the corporate structure is being used as sham to perpetuate a fraud, to avoid liability, to avoid the effect of a statute, or other exceptional circumstances which would warrant an exception to the general rule of recognizing the corporation fiction. *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex.1984). Defendant Dainichi–U.S. has participated in discovery with the Plaintiffs, yet Plaintiff has produced no evidence by affidavit, deposition, exhibits, or otherwise which would controvert in any manner the affidavit of an officer of Dainichi–U.S. that it is a separate and distinct corporate entity from Dainichi–Japan, fully capitalized and financially independent, with its own board of directors, financing, and acts

as guarantor of its own financial obligations. Plaintiffs have simply failed to come forward with any evidence to suggest that the relationship between Dainichi–Japan and Dainichi–U.S. is anything other than a bona fide parent/subsidiary business relationship which legitimately insulates one from the liabilities of the other. Therefore, the Court declines to disregard the corporate fiction here to either impute the Texas contacts of Dainichi–U.S. to Dainichi–Japan or hold Dainichi–U.S. liable as an alter-ego of Dainichi–Japan. Accordingly,

IT IS ORDERED that the Motion to Dismiss of Defendants Dainichi Kinzoku Kogyo, Co., Ltd., Dainichi Machinery, Inc. and Machinery Sales Co. be and is hereby GRANTED and the claims of Plaintiff Edwin Smith and Kandee Smith against the said Defendants be and are hereby DISMISSED.