**Jackie O. FLEMING, Administrator of the Estate of Samuel Todd Fleming, Deceased, Plaintiff,**

v.

**YAMAHA MOTOR CORPORATION, USA, et al., Defendants.**

Civ. A. No. 90–0130–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 2, 1991.

Mary Lynn Tate, Yeary, Tate, Lowe & Jessee, Abingdon, Va., Sidney Gilreath, Meridith C. Bond, Gilreath & Associates, Knoxville, Tenn., for plaintiff.

Stephen D. Annand, David L. Wyant, (PHV), Mark W. Browning, (PHV), Shuman, Annand & Poe, Charleston, W.Va., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

This is a wrongful death action arising from an all-terrain vehicle accident. The action is brought by plaintiff, Jackie O. Fleming ("Fleming"), administrator of the estate of Samuel Todd Fleming, deceased, against defendants, Yamaha Motor Corporation, USA ("Yamaha USA"), and Yamaha Motor Company, Limited (Yamaha Hatsudoki, K.K. and Yamaha of Japan) ("Yamaha Japan"). Fleming is a resident of Virginia. Yamaha USA, a wholly-owned subsidiary of Yamaha Japan, is a California corporation that has a registered agent in Virginia. Yamaha Japan is a Japanese corporation with its principal place of business in Japan. As the parties are of diverse citizenship, and the amount in controversy exceeds $50,000 exclusive of interest and costs, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This matter is before the court on Yamaha Japan's motion to dismiss for lack of personal jurisdiction due to insufficient service of process. Fleming maintains that Yamaha Japan has been properly served in two ways. First, Fleming maintains that as she served Yamaha USA she has effectively served Yamaha Japan. Second, Fleming maintains that Yamaha Japan was served properly under the substituted service provisions of Virginia law. The court finds that service on Yamaha USA is not effective service on Yamaha Japan and that the substituted service is defective because process was sent directly to Yamaha Japan's offices in Japan, instead of to Japan's designated "Central Authority," as required by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention" or "Convention"), November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Accordingly, the court will quash service of process on Yamaha Japan, and give Fleming leave to re-serve Yamaha Japan in accordance with the Hague Convention.

In September 1988, the decedent, Samuel Todd Fleming, suffered injuries and died while operating an all-terrain vehicle manufactured by Yamaha Japan and sold by Yamaha USA. Jackie O. Fleming, administrator of the estate of the decedent, filed this wrongful death action against Yamaha Japan and Yamaha USA, alleging negligence, breach of express and implied warranties, and misrepresentation. Fleming served Yamaha USA's registered agent in Virginia with a copy of the summons and complaint. Fleming attempted to serve Yamaha Japan, a foreign corporation, with substituted service under Virginia's long-arm statutes. Fleming served the summons and complaint on the Secretary of the Commonwealth of Virginia (the "Secretary") under § 8.01–301(3).[1] The Secretary then mailed a copy of the process to Yamaha Japan in Japan pursuant to § 8.01–329(C), which states, in relevant part, that service on the Secretary by mail "shall be sufficient upon the person to be served, *provided that notice of such service, a copy of the process or notice, and a copy of the affidavit are forthwith mailed, by the Secretary to the person or persons to be served...."* Va.Code Ann. § 8.01–329(C) (emphasis added).

---

**1.** Va.Code Ann. § 8.01–301(3) states in pertinent part:

"Service of process on a foreign corporation may be effected in the following manner:
. . . .

**3.** By substituted service on a foreign corporation in accordance with § 8.01–329 where jurisdiction is authorized under § 8.01–328.1, regardless of whether such foreign corporation is authorized to transact business within the Commonwealth."

## I.

■ The United States and Japan are parties to the Hague Convention. The Hague Convention expressly applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, November 15, 1965, article 1, 20 U.S.T. 361, 658 U.N.T.S. 163, *reprinted in* 28 U.S.C.A.Fed.R.Civ.P.: Rules 1–11 at 139 (West Supp.1991). Fleming contends that the Hague Convention is inapplicable, because service on Yamaha USA in Virginia is effective service on its parent corporation, Yamaha Japan, making it unnecessary to transmit documents abroad in order to complete service. For that proposition, Fleming relies on *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). That reliance is misplaced.

In *Schlunk*, an Illinois statute designated a domestic subsidiary as an involuntary agent for service of process on its foreign parent corporation. The Appellate Court of Illinois ruled that under an Illinois statute service on the domestic subsidiary was equivalent to service on the parent corporation, and therefore, the Hague Convention was not violated. *Id.* at 697, 108 S.Ct. at 2106. After the Illinois Supreme Court denied plaintiff leave to appeal the appellate court's ruling, the United States Supreme Court granted certiorari to address the question of whether the Hague Convention applied to the service of process. The Supreme Court held that the Hague Convention did not apply, because "service was accomplished within the United States...." *Id.* The Court stated that "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Id.* at 707, 108

S.Ct. at 2112. The Court did not state, as Fleming suggests, that service on a wholly-owned subsidiary is valid service on its parent corporation. The Court simply assumed, based upon the declaration of the Appellate Court of Illinois, that service on the subsidiary was valid service on the parent under Illinois law.[2]

In the absence of a statute similar to the one in *Schlunk, Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), is instructive on the question of whether service on a foreign parent corporation is effective service on its local subsidiary. *See Consolidated Eng'g Co. v. Southern Steel Co.*, 88 F.R.D. 233, 237–42 (E.D.Va.1980). According to *Cannon*, if a corporation and its wholly-owned subsidiary maintain separate corporate identities, "though perhaps merely formal," service on the subsidiary is not valid service on its parent, despite the identity of interests between the parent and its subsidiary and despite control by the parent over the subsidiary's operations. 267 U.S. at 336–37, 45 S.Ct. at 251.

Fleming has not presented any evidence that Yamaha Japan and Yamaha USA do not maintain sufficiently separate corporate identities. Therefore, since Virginia has no statute comparable to the one in *Schlunk*, the court is constrained to find that service on Yamaha USA is not service on Yamaha Japan.[3] *See* 267 U.S. at 336–37, 45 S.Ct. at 251.

## II.

■ The court must next determine whether the Hague Convention applies. Although the court's prior discussion foreshadows the resolution of this issue, the court expressly holds that substituted service on a foreign corporation under Virgi-

---

**2.** The Court noted that "[i]n the only cases in which it has considered the question, this Court held that the activities of a subsidiary are not necessarily enough to render a parent subject to a court's jurisdiction, for service of process, or otherwise." *Id.* at 705 n. *, 108 S.Ct. at 2111 n. * (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925); *Consolidated Textile Corp. v. Gregory*, 289 U.S. 85, 88, 53 S.Ct. 529, 530, 77 L.Ed. 1047 (1933)) (other citation omitted).

**3.** The court is not addressing the question of whether Yamaha Japan is amenable to personal jurisdiction in Virginia. That question is not currently before the court. The court holds only that the method employed (service on Yamaha Japan's wholly-owned subsidiary) amounts to insufficient service of process on Yamaha Japan.

nia law necessarily involves the transmission of documents abroad within the contemplation of the Hague Convention. The posture of this case dictates a different result than the one reached in *Schlunk* because substituted service is not complete until the Secretary transmits "notice of such service, a copy of the process or notice, and a copy of the affidavit" abroad. Va.Code Ann. § 8.01–329(C). Because the transmission of documents to the party to be served is a necessary part of substituted service,[4] the Hague Convention governs service of process on Yamaha Japan.

### III.

■ The court also holds that substituted service under Virginia law on a Japanese corporation, which is completed by the transmittal of process abroad directly to that corporation rather than to Japan's "Central Authority," is not in compliance with the Hague Convention. Under the Hague Convention, signatory nations designate a "Central Authority" to receive "requests for service" from other signatory nations. Hague Convention art. 2, *reprinted in* 28 U.S.C.A.Fed.R.Civ.P. Rules 1–11 at 139 (West Supp.1991). If a "Central Authority" determines that a request does not comply with the Convention, it must "promptly inform the applicant and specify its objections to the request." *Id.* art. 4. If it determines that a request complies with the Convention, it must serve the document itself or arrange "to have it served by an appropriate agency." *Id.* art. 5. The court finds that it is constrained by the language of the Convention to hold that initial service may not be accomplished by sending process abroad directly to the foreign party to be served.

Article 10 of the Hague Convention states:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect *service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect *service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention art. 10, *reprinted in* 28 U.S.C.A.Fed.R.Civ.P.: Rules 1–11 at 140 (West Supp.1991) (emphasis added). Fleming argues that the phrase "to send judicial documents" found in article 10(a) has the same meaning as the phrase "to effect service of judicial documents" found in articles 10(b) and 10(c) resulting in three methods for service on a foreign party.

As recently noted by the Court of Appeals for the Eighth Circuit, there are currently two distinct lines of article 10(a) interpretation. *Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 173 (8th Cir.1989). The first line of interpretation holds that article 10(a) provides an alternative method for service of process and that the use of the word "send" in article 10(a), instead of the word "serve," is the result of careless drafting. *See, e.g., Weight v. Kawasaki Heavy Indus., Ltd.,* 597 F.Supp. 1082 (E.D.Va.1984); *Ackermann v. Levine,* 788 F.2d 830 (2d Cir.1986). The second line of interpretation views article 10(a) only as providing a method for transmitting judicial documents abroad *after* a party has effected service of process. *See, e.g., Bankston,* 889 F.2d at 173–74; *Hantover, Inc. v. Omet, S.N.C. of Volentieri & C.,* 688 F.Supp. 1377, 1385 (W.D.Mo.1988); *Mommsen v. Toro Co.,* 108 F.R.D. 444, 446 (S.D.Iowa 1985). The court finds that this second line of interpretation is persuasive and reflects proper principles of treaty interpretation.

When interpreting treaties, "[courts] must be governed by the text—solemnly adopted by the governments of … sepa-

---

**4.** Indeed, it is required by due process. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

rate nations...." *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134, 109 S.Ct. 1676, 1683, 104 L.Ed.2d 113 (1989). "To alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on [the] part [of courts] an usurpation of power, and not an exercise of judicial functions." *Id.* at 135, 109 S.Ct. at 1684 (quoting *The Amiable Isabella,* 6 Wheat 1, 71 (1821)). Altering the meaning of treaty language also eventually would render the art of treaty draftsmanship obsolete and diminish the ability of a country to rely on the very words for which it negotiated. *See id.* at 133, 109 S.Ct. at 1683.

Following these principles of treaty interpretation, the court must afford meaning to the drafters' textual distinction between the phrase "to send judicial documents," contained in article 10(a), and the phrase "to effect service of judicial documents," contained in articles 10(b) and 10(c). The drafters used the word "service" throughout the Hague Convention. If the drafters of the Convention had intended article 10(a) to create an additional method of service of process, they would have used the word "service." *See Bankston,* 889 F.2d at 173–74 (citations omitted). The plain language of article 10(a) only provides for the sending of judicial documents after a foreign party is properly served; it does not prescribe an additional method for service of process.

### IV.

For the preceding reasons, the court finds that service on Yamaha USA is not effective service on Yamaha Japan; that because Fleming's use of Va.Code Ann. §§ 8.01–301(3) and 8.01–329(C) to effect service on Yamaha Japan requires the Secretary to send documents abroad, Fleming must comply with the dictates of the Hague Convention; and that substituted service on Yamaha Japan that is completed by mailing a copy of the summons and complaint directly to the corporation in Ja-

pan rather than Japan's designated "Central Authority" is not in compliance with the Hague Convention. Accordingly, the court will quash Fleming's service of process on Yamaha Japan, but will permit Fleming to re-serve Yamaha Japan with the summons and complaint translated into Japanese.[5]

---

**5.** Because the court has found that article 10(a) does not apply to the initial service of process, if the initial process is served on the "Central Authority," it must be translated into Japanese in accordance with article 5.