Gary KNAPP and Barbara Knapp,
his wife, Plaintiffs,

v.

YAMAHA MOTOR CORPORATION,
U.S.A., a California corporation, and
Yamaha Motor Co., Ltd., a Japanese
corporation, Defendants.

No. Civ.A. 2:98–0772.

United States District Court,
S.D. West Virginia,
at Charleston.

June 23, 1999.

John H. Skaggs, Calwell & McCormick, Charleston, WV, William M. Tiano, Berthold, Tiano & O'Dell, Charleston, WV, for plaintiffs.

David L. Wyant, Shuman, Annand, Bailey, Wyant & Earles, Wheeling, WV, Mark W. Browning, Shuman, Annand, Bailey, Wyant & Earles, Charleston, WV, for defendants.

### *MEMORANDUM ORDER*

COPENHAVER, District Judge.

This matter is before the court on the motion of defendant, Yamaha Motor Company, Ltd., to dismiss it from the above-styled civil action, filed August 17, 1998.

### I.

This is a products liability action arising from personal injuries sustained by plaintiff, Gary Knapp, as a result of an all-terrain vehicle accident. Plaintiffs filed their complaint in the Circuit Court of Kanawha County, West Virginia, on July 7, 1998, alleging state law causes of action against defendants, Yamaha Motor Com-

pany, Ltd., a Japanese corporation with its principal place of business in Japan ("Yamaha Japan"), and its wholly-owned subsidiary, Yamaha Motor Corporation, U.S.A. ("Yamaha USA"), a California corporation. On that date, plaintiffs served their summons and complaint on the West Virginia Secretary of State pursuant to West Virginia Code § 31–1–15.[1] Two days later, the Secretary of State forwarded a copy of the summons and complaint via registered mail, return receipt requested, to Yamaha Japan at its principal business address in Japan, and to Yamaha USA at its principal business address in California.

This action was removed by defendants to this court on August 10, 1998, on the basis of diversity jurisdiction. On August 17, 1998, Yamaha Japan filed a motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, alleging insufficient service of process due to plaintiffs' failure to serve Yamaha Japan in accordance with the requirements contained within the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, referred to commonly an the Hague Convention.

Yamaha Japan argues that plaintiffs' service on it was invalid for two reasons. First, plaintiffs failed to send process to the appropriate authority in Japan designated by that country as its Central Authority under the Hague Convention. Second, the documents served by plaintiffs were in English and did not include a translation into Japanese. Plaintiffs maintain that Yamaha Japan was properly served under Article 10(a) of the Hague Convention which, they contend, allows for direct mail service on foreign defendants.

Alternatively, plaintiffs assert that the Hague Convention is inapplicable because service on Yamaha USA in California is effective service on its parent corporation, Yamaha Japan, making it unnecessary to transmit documents abroad in order to complete service.

## II.

■ It is well-settled that service of process on a foreign defendant is governed by the Hague Convention, 20 U.S.T. 361, T.I.A.S. No. 6638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 210–29 (West 1992) (the "Convention"). The Hague Convention is a multilateral treaty which was enacted for the purpose of creating a simple and expeditious procedure for service of process on foreign litigants in an effort to encourage judicial assistance and cooperation in international litigation. The drafters made this purpose explicit in the preamble to the Convention, which states that the treaty was intended to "create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee" and "to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure." 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 210. Both Japan and the United States are signatories to the treaty. *Id.* at 218.

Chapter 1 of the Hague Convention provides for several different methods of service abroad. Articles 2 through 6 of that chapter provide for the basic method of service under the Convention which authorizes service of process to be made

1. West Virginia Code § 31–1–15 provides, in pertinent part, that:
   The secretary of state is hereby constituted the attorney-in-fact for and on behalf of every corporation created by virtue of the laws of this state and every foreign corporation authorized to conduct affairs or do or transact business herein pursuant to the provisions of this article, with authority to accept service of notice and process on behalf of every such corporation and upon whom service of notice and process may be made in this state for and upon every such corporation ... Immediately after being served with or accepting any such process or notice ... the secretary of state shall ... transmit one copy of such process or notice by registered or certified mail, return receipt requested, to the ... principal office of the corporation....
   W.Va.Code § 31–1–15 (Supp.1998).

through a Central Authority designated by each signatory nation.[2] *Id.* at 210–11.

The Convention also provides several alternative methods of service which are contained in Articles 8 through 10 of Chapter 1. Article 8 allows a signatory nation to serve judicial documents upon its own nationals who are in the territory of another signatory nation through its own diplomatic or consular agents, provided that the destination nation has not objected to service by consular or diplomatic channels in its territory. *Id.* at 211. Article 9 permits each nation to use consular channels to forward documents, for the purpose of service, to the authorities of another nation who are designated to receive such documents under that article. *Id.* Additionally, each nation may use diplomatic channels for this purpose if "exceptional circumstances so require." *Id.*

The final alternatives for service under the Convention are contained in Article 10 which states that:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial officers, officials, or other competent persons of the State of destination.

*Id.* at 212.

Article 21 allows a signatory state, at the time it ratifies the Convention, or at any time thereafter, to object to the use of any of the alternative methods of service allowed for under Articles 8 through 10. *Id.* at 214. Japan objected to the alternative methods of service defined in paragraphs (b) and (c) of Article 10 at the time it ratified the Convention. *Id.* at 223 n. 13. Japan did not, however, raise any objection to Article 10(a) at the time of ratification, nor has it raised any specific objection to this paragraph since ratifying the Convention on May 28, 1970.[3] *Id.*

■ As noted previously, plaintiffs attempted to serve process upon Yamaha Japan by serving their summons and complaint on the West Virginia Secretary of State who then forwarded these documents to Yamaha Japan's principal business address in Japan in accordance with West Virginia Code § 31–1–15. The issue before the court is whether Article 10(a) allowed plaintiff to serve process upon Yamaha Japan in this manner.

Two distinct lines of interpretation concerning Article 10(a) have arisen since the Convention's adoption. Some courts have concluded that service by mail is permitted under Article 10(a). *See, e.g., Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986); *Patty v. Toyota Motor Corp.*, 777 F.Supp. 956 (N.D.Ga.1991); *Meyers v. ASICS Corp.*, 711 F.Supp. 1001 (C.D.Cal.1989); *Hammond v. Honda Motor Co., Ltd.*, 128 F.R.D. 638 (D.S.C.1989); *Smith v. Daini-*

---

**2.** Japan has designated its Minister of Foreign Affairs as its Central Authority for the purpose of receiving service of process. 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 223 n. 13.

**3.** At a Special Commission of the Hague Convention held in April, 1989, the Japanese delegation announced that Japan does not consider the sending of foreign judicial documents by postal channels to be an "infringement of its sovereign power." Practical Handbook on the Operation of the Hague Convention of 15

November 1965 on the Service Abroad of Judicial and Commercial Matters, 134 (1992). The delegation went on to state, however, that Japan's failure to object to mail service "does not necessarily imply that the sending by such a method is considered valid service in Japan," thereby leaving unanswered the question of whether Japan recognizes Article 10(a) to allow direct service of process by mail. *Id.; see also* 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–3–5(2), 148, 150 n. 34 (1995).

chi Kinzoku Kogyo Co., Ltd., 680 F.Supp. 847 (W.D.Tex.1988); Newport Components, Inc. v. NEC Home Electronics, 671 F.Supp. 1525 (C.D.Cal.1987); Lemme v. Wine of Japan Import, Inc., 631 F.Supp. 456 (E.D.N.Y.1986); Weight v. Kawasaki Heavy Industries, Ltd., 597 F.Supp. 1082 (E.D.Va.1984); Chrysler Corp. v. General Motors Corp., 589 F.Supp. 1182 (D.D.C. 1984). These courts reason that since the purported purpose of the Convention is to facilitate service abroad, the reference in Article 10(a) to " 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service." See, e.g., Ackermann, 788 F.2d at 839; Lemme, 631 F.Supp. at 463. These courts attribute the use of the word "send" instead of "service" in Article 10(a) to careless draftsmanship rather than an intent on the part of the drafters to draw a distinction between judicial documents sent through the mails for the purpose of service and those sent for other purposes. See, e.g., Ackermann, 788 F.2d at 839–40; Smith, 680 F.Supp. at 850; see also 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–3–5(2) at 150.

Yamaha Japan urges the court to adopt a stricter view and limit the scope of Article 10(a) to allow for the mailing abroad of interlocutory documents such as interrogatories and requests for production of documents only after a party has effected service of process. Such an interpretation has been adopted by a number of federal courts which have mandated that service of process upon Japanese defendants be made either upon that country's designated Central Authority or through diplomatic channels. See, e.g., Bankston v. Toyota Motor Corp., 889 F.2d 172 (8th Cir.1989); Pennebaker v. Kawasaki Motors Corp., 155 F.R.D. 153 (S.D.Miss.1994); Anbe v. Kikuchi, 141 F.R.D. 498 (D.Haw.1992); Fleming v. Yamaha Motor Corp., 774 F.Supp. 992 (W.D.Va.1991); Hantover, Inc. v. Omet, 688 F.Supp. 1377 (W.D.Mo. 1988); Prost v. Honda Motor Co., Ltd., 122 F.R.D. 215 (E.D.Mo.1987); Pochop v. Toy-

ota Motor Co., Ltd., 111 F.R.D. 464 (S.D.Miss.1986); Mommsen v. Toro Co., 108 F.R.D. 444 (S.D.Iowa 1985); Suzuki Motor Co., Ltd. v. Superior Court of the State of California, 200 Cal.App.3d 1476, 249 Cal.Rptr. 376 (1988). Generally, the position of these courts is that if the drafters of the Convention had intended Article 10(a) to provide an additional means of service of process, then the drafters would have specified "service" rather than permitting parties merely to "send" judicial documents through the mail. See, e.g., Bankston, 889 F.2d at 173–74; Fleming, 774 F.Supp. at 995. It is noted that the Bankston line of cases represent the view adopted by the more recent authority as expressed in the reported cases. See Bankston (Nov.1989), Pennebaker (1994), Anbe (1992), Fleming (1991); contra, Patty (1991).

The court finds this latter interpretation persuasive inasmuch as it reflects applicable principles of treaty interpretation. When interpreting treaties, "[courts] must be governed by the text—solemnly adopted by the government of ... separate nations...." Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 134, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Consequently, "to alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on [the] part [of the court] an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty." Id. at 135, 109 S.Ct. 1676. Thus, where the text of a treaty is clear, the "court shall not, through interpretation, alter or amend treaty." Victoria Sales Corp. v. Emery Air Freight, Inc., 917 F.2d 705, 707 (2d Cir.1990) (citing Chan). Only in those instances where the language of a treaty is ambiguous may the court " 'look beyond the written words' in order to divine the meaning of [an] ambiguous provision." Distribuidora Dimsa v. Linea Aerea Del Cobre S.A., 976 F.2d 90, .95 (2d Cir.1992) (citing Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 534, 111 S.Ct. 1489, 113 L.Ed.2d

569 (1991) (quoting *Air France v. Saks,* 470 U.S. 392, 396, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985))).

In following these principles of treaty interpretation, the court must afford meaning to the drafters' textual distinction between the phrase "to send judicial documents," contained in Article 10(a), and the phrase "to effect service of judicial documents," contained in Articles 10(b) and (c). The drafters used the word "service" throughout the Convention. If the drafters had intended Article 10(a) to create an additional method of service of process, it is reasonable to conclude that they would have used the word "service" rather than "send" in this paragraph. *See Bankston,* 889 F.2d at 173–74. The plain language of Article 10(a) provides for the sending of judicial documents. It does not provide an additional method of service. For the court to conclude otherwise would be an "usurpation of power, and not an exercise of [its] judicial functions." *Chan,* 490 U.S. at 135, 109 S.Ct. 1676.

*Ackermann* and its progeny place significant reliance on the fact that Japan has not specifically objected to service through postal channels. Of course, as just noted, inasmuch as Article 10(a), unlike 10(b) and 10(c), does not mention "service," Japan could quite reasonably have concluded that there was no need to object. Moreover, it seems unlikely that service of process would have been contemplated through "postal channels" where there is no accompanying safeguard requiring the use of some form of registered mail. Indeed, Japan does not have an internal legal system which recognizes a form of service equivalent to the United States' registered mail system. *See Suzuki,* 249 Cal.Rptr. at 379. Given this fact, the court agrees with *Suzuki* that it is "extremely unlikely that Japan's failure to object to Article 10, subdivision (a) was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more formal modes of service by Japanese officials which were available in Article 10, subdivisions (b) and (c)." *Id.* Instead, it seems more likely that Japan interpreted Article 10(a) as allowing only for the transmission of judicial documents after service of process has been effected. *Id.* Further, as noted previously, in April, 1989, the Japanese delegation, at the Special Commission on the operation of the Hague Convention, stated that its failure to object to Article 10(a) did not necessarily imply that it considered direct mail service of process to be valid. *See supra* n. 3.

In addition, it is observed that the *Ackermann* line of cases has given substantial weight to the view expressed by legal commentator Bruno Ristau that "[i]t would appear that the draftsmen of the Convention intended the language 'to send judicial documents, by postal channels' to include the service of process" and that the use of the word "send" rather than "service" in the final version of Article 10(a) may be attributed to careless drafting. *See* 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–3–5(2) at 150. In support of this position, Ristau refers to the reports of the reporter regarding each the draft and the final text of Article 10 of the Convention as compared to its predecessor, Article 6 of the 1954 Convention. *Id.* at 149. In order to understand the references to Article 6, it is to be noted from a reading of both of the unnumbered paragraphs comprising Article 6 that the first of those two paragraphs is treated internally as being paragraph 1 and consists of three subparagraphs, the first of which rather equates to present Article 10(a) and the next two of which are somewhat comparable to 10(b) and 10(c), as quoted *supra,* page 569.[4] In turn, a reading

---

4. The entirety of Article 6 of the 1954 Convention is as follows:

Article 6
    The provisions of the preceding articles shall be without prejudice to:

    1. the right to mail documents direct to interested parties who are abroad;

    2. the right of interested parties to have documents served directly through law officials or other competent officials of the country of destination;

of Ristau's article indicates a lack of precision on the part of both the reporter and the bracketed "[ ]" editing, presumably by Ristau, in comparing Article 6 of the 1954 Convention with the current version of Article 10 in that it is questionable as to whether it is paragraph 1, or merely subparagraph 1 thereof, of Article 6 that is being compared to Article 10 or only subparagraph (a) of Article 10.[5]

The court has reviewed the 1954 Convention and finds no support for the proposition that the earlier version allows direct mail service of process. Article 6, paragraph 1 of the 1954 Convention provides that "[t]he provisions of the preceding arti-

cles shall be without prejudice to . . . the right to mail documents direct to interested parties who are abroad." Hague Convention Relating to Civil Procedure of 1 March 1954, 286 U.N.T.S. 265, 271 (1958). This language is barely distinguishable from Article 10(a) of the final version of the Convention which states that parties may "send judicial documents, by postal channels, directly to persons abroad." 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 212. The 1954 Convention merely allows documents to be mailed directly to defendants abroad and the court finds nothing in this earlier version of the Convention to provide a basis to support either the reporter or Ristau's conclusion that the drafters in-

> 3. the right of each State to have documents addressed to persons abroad served directly through its diplomatic or consular agents.
>
> In each of the above cases the right in question shall be deemed to exist only if it is recognized in Conventions between the States concerned or if, in default of such Conventions, the State in whose territory service is to be effected does not object. This State may not object when, in the cases mentioned in paragraph 1, sub-paragraph 3, the document is to be served on a national of the requesting State without duress.

5. The pertinent text from the Ristau article reads as follows:

> The negotiating history of Article 10, however, indicates that "sending" of judicial documents by mail was intended to include service of process. The Rapporteur's report on the final text of the Convention, as adopted in the plenary session of the Conference, merely states that, except for minor editorial changes, Article 10 of the Convention corresponds to article 10 of the draft convention. The report on the draft convention, in turn, explained the background and purpose of Article 10(a) as follows:
> a) Postal channels (para.1)
> Paragraph 1 [designated "(a)" in the final text] of Article 10 corresponds to paragraph 1 of Article 6 of the 1954 Convention. Throughout, the term *"interested parties"* used in the latter convention to designate the addressee has been substituted with the term *persons*, which is more definite.
> In paragraph 1 of Article 10 the reference is intended to be to *private persons;* that

> expression also includes persons who are competent to represent parties for purposes of service [*notification*], such as English solicitors.
> Moreover, it should be understood that private persons includes individuals as well as juristic persons.
> The provision of paragraph 1 also permits service [*notification*] by telegram if the state where *service* [*notification*] is to be made does not object.
> The Commission did not accept the proposal that postal channels be limited to registered mail.
> It should be stressed that in permitting the utilization of postal channels, provided the state of destination does not object, the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state. That is the reason why under the 1954 Convention Belgian documents could be served [*notifies*] in France by postal channels, because such manner of service [*notification*] was authorized by Belgian law and France did not object to it, although French documents could not be similarly serviced [*notifies*] in Belgium by postal channels, even though Belgium did not object to it, because such manner of service [notification] was unknown under French law. [Translation from French by the author.]
> 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–3–5(2) at 149 & n. 33.
> It is noted that the "negotiating history of Article 10" on which Ristau relies is not set forth in his article.

tended the Hague Convention to allow direct mail service of process.

For the foregoing reasons, the court adopts the reasoning of the *Bankston* line of cases and concludes that sending a copy of a summons and complaint by registered mail to a Japanese defendant is not a method of service of process permitted by the Hague Convention. Rather, service upon a Japanese defendant must be effected either upon Japan's Minister of Foreign Affairs, pursuant to Articles 2 through 6, or through diplomatic or consular channels, in accordance with Articles 8 or 9 of the Convention. Accordingly, the court finds that plaintiffs' service upon Yamaha Japan was defective under the Hague Convention inasmuch as process was mailed directly to Yamaha Japan's principal business address in Japan.

### III.

■ Notwithstanding their failure to serve Yamaha Japan in accordance with the Hague Convention, plaintiffs argue that the Convention is inapplicable because service on Yamaha USA is effective service on Yamaha Japan. For that proposition, plaintiffs rely on *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The court finds that plaintiffs' reliance on *Schlunk* is misplaced.

In *Schlunk,* an Illinois statute designated a domestic subsidiary as an involuntary agent for service of process on its foreign parent corporation. The Illinois Appellate Court ruled that, under the Illinois statute, service on the domestic subsidiary was equivalent to service on the parent and, therefore, the Hague Convention was not applicable under the circumstances. *Id.* at 697, 108 S.Ct. 2104. After the Illinois Supreme Court denied plaintiff leave to appeal the intermediate court's ruling, the United States Supreme Court granted certiorari to address the question of whether the Hague Convention applied in this instance. The Court held that the Hague Convention did not apply inasmuch as service was accomplished within the United States. *Id.* at 707, 108 S.Ct. 2104. The

Court stated that "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Id.* The Court did not find, as plaintiffs suggest, that service on a wholly-owned subsidiary constitutes valid service on its parent corporation. Rather, the Court found that, based upon the declaration of the Illinois Appellate Court, service on the subsidiary was valid on the parent in accordance with the Illinois statute. *Id.* at 705, 108 S.Ct. 2104.

Here, service was effected upon Yamaha USA pursuant to West Virginia Code § 31–1–15 which states, in relevant part, that "[t]he secretary of state is hereby constituted the attorney-in-fact for and on behalf of ... every foreign corporation ... with authority to accept service of notice and process on behalf of every such corporation...." W.Va.Code § 31–1–15 (Supp. 1998). There is nothing contained in the language of this statute to suggest that service of process on a domestic subsidiary is equivalent to service of process on its foreign parent corporation. Thus, in the absence of a statute similar to the one in *Schlunk,* the question of whether service on a foreign parent corporation is effective service on its domestic subsidiary must be analyzed under the principles set forth in *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). *See Fleming,* 774 F.Supp. at 994. According to *Cannon,* if a corporation and its wholly-owned subsidiary maintain separate corporate identities, service on the subsidiary is not valid service on its parent. 267 U.S. at 336–37, 45 S.Ct. 250. Plaintiffs have presented no evidence that Yamaha Japan and Yamaha USA do not maintain sufficiently separate corporate identities. Therefore, inasmuch as West Virginia does not have a statute comparable to the Illinois statute at issue in *Schlunk,* and inasmuch as there is no evidence before the court that the defendants do not maintain separate corporate identities, the court concludes that service of process on Yamaha USA was not effective as to Yamaha Japan. *See Fleming,* 774 F.Supp. at 994.

IV.

■ Accordingly, having found that plaintiffs failed to serve Yamaha Japan in accordance with the Hague Convention and having found that service of process on Yamaha Japan's domestic subsidiary was not valid service on Yamaha Japan, the court concludes that plaintiffs have not properly served Yamaha Japan in this case. Although Yamaha Japan urges this court to dismiss it from the above-styled civil action, the court finds the appropriate remedy under the circumstances to be to quash the service of process upon Yamaha Japan. *See Vorhees v. Fischer & Krecke,* 697 F.2d 574, 576 (4th Cir.1983) (quoting *Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers,* 480 F.Supp. 274, 278 (N.D.W.Va.1979) ("If the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process . . . .")).

For the reasons stated, it is ORDERED that Yamaha Japan's motion to dismiss for insufficient service of process be, and it hereby is, denied. It is further ORDERED that plaintiffs' service of process upon Yamaha Japan be, and it hereby is, quashed, and the plaintiffs shall have sixty days from the date of this order within which to re-serve Yamaha Japan properly in accordance with the Hague Convention.[6] Unless service of process has been obtained by that date, or just cause is shown by plaintiffs for failure to effect service of process by that date, Yamaha Japan shall be dismissed for failure to effect service of process.

---

6. Because the court has concluded that Article 10(a) did not allow plaintiffs to effect service of process upon Yamaha Japan by mail, if plaintiffs elect to serve process upon Japan's Central Authority pursuant to Articles 2 through 6 of the Convention, plaintiffs must translate these documents into Japanese in accordance with Article 5. *See Fleming,* 774 F.Supp. at 996 n. 5.